## ROOT REFINING CO. v. UNIVERSAL OIL PRODUCTS CO.

### Nos. 5546, 5648.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 2, 1944.

Decided Dec. 29, 1944.

As Amended Feb. 19, 1945.

Writ of Certiorari Granted April 23, 1945.

See 65 S.Ct. 1029.

Robert T. McCracken, of Philadelphia, Pa., and John R. McCullough, of New York City, for Universal Oil Products Co.

Thorley vonHolst and J. Bernard Thiess, both of Chicago, Ill., amicus curiae, for Root Refining Co.

Before BIGGS, MARIS, JONES, GOODRICH, and McLAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

The proponents of the motion sub judice ask this court to award them reasonable counsel fees for services rendered as amici curiæ performed at our direction and also seek reimbursement for out-of-pocket expenses. The fees sought are to compensate the movants and the estate of former Judge Arthur C. Denison.[1] The amici appeared in open court, notice having been given to both the plaintiff and the defendant, and suggested that our judgments in the above entitled causes had been procured by the plaintiff by corrupting a former judge of this court. The amici stated that they no longer represented the defendant, which, following the judgments of this tribunal, had executed an agreement of settlement with the plaintiff, but appeared on behalf of certain other interests adversely affected by the judgments. We stated that if the movants filed a petition as amici curiæ embracing the allegations made by them, we would proceed in the premises as seemed warranted. A petition was presented. By an order entered November 26, 1941, the court appointed a master to hear the evidence and in effect directed the amici to proceed with the case.

An answer[2] was filed by the plaintiff. Hearings before the master began in June, 1941, and continued through April, 1943. The transcript of the proceedings, with exhibits, consists of more than thirty-five hundred printed pages. The amici or attorneys associated with them were compelled to make trips to Philadelphia, to New York, to Cleveland, to Battle Creek, and to various points in Florida in order to interview numerous witnesses, to appear before the master and for various other purposes. After testimony was concluded, the amici argued the case before the master and prepared and filed briefs and requests for findings of fact and conclusions of law. The master found in favor of the amici on the fundamental issue. Exceptions to the master's report were filed and amici prepared and filed a brief in this court. This consisted of over three hun-

---

[1] Judge Denison died after the commencement of the proceedings referred to in this opinion.

[2] The plaintiff's answer did not oppose vacating the judgments but did deny exercising any corrupting influence on the court. Counsel for the plaintiff offered to argue the cases de novo before us and stated that the plaintiff would abide by the results of our decision. Jurisdiction, however, may not be conferred by consent, and if no corruption had been practiced this court would not have possessed the power to reopen its judgments or to recall its mandates after the end of the term.

dred printed pages. The argument before this court consumed two days. After consideration we entered an order approving the master's report, set aside the judgments and recalled our mandates. Excluding from their respective computations all time expended by the amici and their office associates prior to the date of our order appointing the master, it appears that the amici and those associated with them expended a total of over 9000 hours in the preparation, trial and argument of the case. The amici themselves expended approximately 5000 hours of work following the entry of the order of this court of November 26, 1941.

■ No agreement was made in advance of the completion of the work, nor could any be made, settling the compensation of the amici. What should their compensation be? As was said in In re Osofsky, D. C., 50 F.2d 925, 927, by Judge Woolsey:

"The elements to be considered in determining an attorney's fee were once most aptly summarized in evidence given on a reference by Honorable William G. Choate, formerly a judge of this court, and David B. Ogden, Esq., a well known lawyer of a generation ago.

"They laid down the following elements as being matters properly to be considered when the fees of an attorney have not been agreed on beforehand, but are to be fixed: (1) The time which has fairly and properly to be used in dealing with the case; because this represents the amount of work necessary. (2) The quality of skill which the situation facing the attorney demanded. (3) The skill employed in meeting that situation. (4) The amount involved; because that determines the risk of the client and the commensurate responsibility of the lawyer. (5) The result of the case, because that determines the real benefit to the client. (6) The eminence of the lawyer at the bar, or in the specialty in which he may be practicing."

As was pointed out by Judge Woolsey, each case differs to some extent in respect to the importance of the several elements referred to.

■ The members of the court are agreed that the court has power to award the amici compensation for their services to the court, to be paid by the plaintiff, and that under the circumstances of this case the amici are entitled to be awarded reasonable compensation for those services. Our difference of opinion lies in the question as to what is reasonable.

■ Using the criteria referred to in the Osofsky case, we find that the movants and their two associates expended a total of nearly two years' working time on the case. The work required a high degree of skill and they employed it in presenting the necessary degree of proof and in the preparation and presentation of their arguments and briefs. Though the nature of some of the proof had been disclosed in part in previous criminal proceedings, this by no means solved the problems of proof. Insofar as this court was concerned two matters of transcendental importance were involved, the honor of the court and the purity of its judicial processes. The amici aided the court in purging itself of two judgments affected with corruption. Without the services of the amici the judgments would stand today. The amici are members of the patent bar, eminent in their profession. Under all the circumstances we conclude that the sum of $100,000 suggested by them as the amount of their compensation is reasonable.

Accordingly amici and their associates will be allowed the sum of $100,000 as their reasonable compensation, and the amount of $54,606.57 as reimbursement for their out-of-pocket expenses. The court will deduct from the sum sought for reimbursement the amounts shown upon Exhibits A, B and C to the motion, which total $1,361.-41, comprised of items representing expenditures made by the amici prior to the date of the order appointing the master.

JONES, Circuit Judge (dissenting).

I am compelled to dissent with respect to the amount of compensation allowed by the court to the amici curiae for their professional services in connection with the proceedings which terminated in the vacation of this court's judgments of June 26, 1935, in the above entitled causes. I do not question the power of the court to award the amici compensation at the expense of the adverse litigant. Nor do I say that they are not entitled to some compensation. But, I do insist that their services are not to be evaluated on the basis of the time and effort expended and the results obtained at a rate of pay which they might charge and have a reasonable right to expect from private clients for comparable services.

The amici themselves asked us to create their status as such in these cases. Having

262

thus volunteered to bring the subject matter officially to our attention for our appropriate action (after the underlying fault of the impeached judgments had been disclosed by official investigations and court trials to which the amici were not party), it is not a little surprising to me that they should now presume to ask of us an award of compensation on the basis of the value of their services to clients interested in the private aspects of the litigation.

The fact that Universal, against which the fees are to be charged, perpetrated a fraud on this court in obtaining its earlier judgments is immaterial to our present problem. These proceedings do not call for the imposition of penal sanctions and, particularly, not for the pecuniary benefit of counsel who participated therein as friends of the court. Our question is as to how much a court may in good conscience award to amici for their services to the court and not what those services would be worth to private clients. As members of the bar of this court, the amici can have little less interest than the court itself in purging its records of wrongs,—an obligation which these amici, being highly reputable counsel, must have well understood when they proffered their services. They are to be thought of as having primarily acted pro bono publico of their own volition. In no event can it be said that the court independently imposed upon them a wholly unfamiliar task.

But, we did independently choose and appoint a master to conduct the proceedings and to make findings and recommendations to the court. The master discharged the duties of his office with marked ability. After lengthy hearings and a careful and painstaking study of the evidence and the pertinent law, the master prepared and filed a complete report upon which this court was able to act finally without taking further testimony or making any additional findings. For all of that service, which certainly consumed as much of the master's valuable time and effort as the amici could justifiably have spent on the case, we awarded the master a fee of $25,000 which, by the way, was his own suggestion as to just compensation for his services. I have seen nothing that would prompt me to conclude that these amici are entitled to any greater sum for their services to the court.

Judge MARIS has authorized me to state that he joins in this dissent.