**WILLIAM WHITMAN CO., Inc. v. UNI-
VERSAL OIL PRODUCTS CO.**

Civ. A. No. 987.

United States District Court
D. Delaware.

July 12, 1950.

Caleb S. Layton (Richards, Layton & Finger) of Wilmington, Del.; Leslie Nichols, William B. Cockley, Allen C. Holmes and Walter J. Milde (Jones, Day, Cockley & Reavis) all of Cleveland, Ohio, of counsel, for plaintiff.

Clarence A. Southerland (Southerland, Berl & Potter) of Wilmington, Del.; Ralph S. Harris, Frederick W. P. Lorenzen and John R. McCullough (Dwight, Harris, Koegel & Caskey) of New York City, and Adam M. Byrd, of Chicago, Ill., of counsel, for defendant.

RODNEY, District Judge.

In this action the plaintiff seeks rescission of an agreement between it and the defendant which was entered into on April 1, 1937. The suit is founded on the charge that plaintiff was induced to enter into this contract by defendant's representation that it had in 1935 obtained a judgment in the Circuit Court of Appeals for the Third Circuit, Root Refining Co. v. Universal Oil Products, 78 F.2d 991, upholding the validity of two patents belonging to it, as a result of which plaintiff took a license from the defendant under the agreement of April 1, 1937. The allegation is made that the 1935 judgment was vacated by the Court of Appeals for the Third Circuit in 1948, 169 F.2d 514, by reason of defendant's fraud in its procurement.

At a pretrial conference in this case, it was determined that a hearing should be had to decide the question whether the 1948 judgment or order of the Court of Appeals, vacating the 1935 judgment by reason of the fraud practised on that court, constitutes such an adjudication upon that issue as to preclude its relitigation in the present action.

The factual background of this case may be summarized as follows. In 1929 and 1931 defendant's predecessor, a South Dakota corporation of the same name as defendant, commenced two suits in this court against Root Refining Company, charging it with the infringement of two of its patents, the Egloff and Dubbs patents. These suits were consolidated for trial, and an opinion was filed on April 27, 1934, sustaining the validity of the patents and holding that they were infringed by the process practised by Root.[1] Root appealed to the Circuit Court of Appeals for this Circuit, and that court unanimously affirmed the decree of the district court, the opinion being written by Judge J. Warren Davis. Rehearing of the case was subsequently denied by the Circuit Court of Appeals[2] and the Supreme Court denied Root's petition for certiorari.[3] The present defendant was substituted for the North Dakota corporation in the Root case by an order of this court entered pursuant to an opinion dated October 9, 1936, 16 F.Supp. 846.

In the meantime Universal Oil Products had brought patent infringement suits against other oil companies, including plaintiff in the present action, charging them also with infringing the Egloff and Dubbs patents. The suit between Universal and the present plaintiff was settled by the agreement of April 1, 1937, to which reference has already been made. It seems unnecessary to recite the details of the transactions and negotiations leading up to that settlement, other than to state that it is

1. Universal Oil Products Co. v. Winkler-Koch Engineering Co., 6 F.Supp. 763.

2. Root Refining Co. v. Universal Oil Products, 78 F.2d 991.

3. 296 U.S. 626, 56 S.Ct. 149, 80 L.Ed. 445.

alleged by the plaintiff that it was induced to become a party to such settlement by reason of its reliance upon the defendant's representation that it had obtained a valid judgment in its favor in the Root case.

In 1941 proceedings were instituted in the United States Circuit Court of Appeals for the Third Circuit, as it was then designated, upon the initiative of certain lawyers, who had originally represented Root Refining Company in the Root case but who were now acting in a somewhat personal capacity, to have the court inquire into the integrity of its own judgment in the Root case. The suggestion was made that Judge Davis had been bribed by Universal to render a decision in Universal's favor when the Root case went up to the Circuit Court on appeal. A master was appointed and seems to have made extensive investigation of the facts. Universal took part in these proceedings, but Root Refining Company did not do so, its former attorneys acting in the proceedings simply as amici curiæ. The master rendered a report in 1944, in which he concluded that there was such fraud in connection with the appellate proceedings in the Root case as tainted and invalidated the judgments rendered by the Circuit Court of Appeals on June 26, 1935.

On June 15, 1944, the Circuit Court of Appeals entered an order that the judgments be vacated and the cases reargued. Thereafter the amici curiæ applied to the Circuit Court for an order directing that their expenses and compensation and those of the master be taxed against Universal. The Circuit Court granted this application on December 29, 1944. Universal petitioned the Supreme Court for a writ of certiorari with respect to the order of December 29, 1944. The Supreme Court reversed the judgment of the Circuit Court, as far as the compensation and expenses of the amici curiæ were concerned.[4]

Thereafter the Circuit Court of Appeals decided to vacate its orders of June 15, 1944, and on June 20, 1947, it entered an order to that effect. The order also directed Universal to show cause why the judgment of affirmance in the Root case should not be set aside and vacated by reason of the alleged fraud and corruption practised upon the Circuit Court by Universal or those acting for it; it permitted the intervention of Skelly Oil Company and authorized the Attorney General or some member of his staff to appear as amicus curiæ.

The Chief Justice of the United States designated three judges from other circuits to sit as the Circuit Court of Appeals for the Third Circuit in further proceedings in this matter. In the meantime Whitman filed a motion in the Circuit Court for leave to intervene. The intervention was permitted by an order of that court on April 6, 1948, over the opposition of Universal. In the same order the court formulated the charges to be tried, which were, in essence, whether the action of Judge Davis in the case had been influenced by an expectation of gain under an agreement with one Kaufman, and whether Kaufman had been employed by Universal to exercise improper influence upon Judge Davis. Hearings were held and extensive testimony was taken by the Court of Appeals. It found that the judgments in the Root case were tainted with fraud and ordered the judgments to be vacated.[5] Finally, after Universal had unsuccessfully petitioned the Supreme Court for writs of certiorari and for rehearings upon the Supreme Court's denial of certiorari, the Court of Appeals issued its mandate directing the District Court to vacate its decrees in the Root case and to dismiss the bills of complaint therein, by reason of the fraud practised upon the Court of Appeals by Universal.

It is the plaintiff's contention that the defendant is estopped to relitigate the issue of the fraudulent procurement by Universal of the judgment of affirmance in the Root case. Reliance is placed upon the doctrine of collateral estoppel. That doctrine was somewhat considered by this court in Buromin v. National Aluminate Corporation, 70 F.Supp. 214, but that case

4. 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed. 1447.

5. 3 Cir., 169 F.2d 514.

involved the binding effect of matters which might have been but were not litigated in the former proceeding, while here is involved the effect of matters formerly litigated upon a subsequent proceeding upon a somewhat different cause of action.

Section 68 of Restatement of Law of Judgments provides, "Where a question of fact essential to a judgment is litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action except as stated in Sections 69.71 and 72." No material exception in those sections is found by me.

Clearly the issue of fraudulent procurement of judgment of affirmance was essential in the former proceedings in the Court of Appeals and was there litigated and determined. Such issue is material here in a suit involving the same parties but brought upon a different cause of action.

■ In considering the applicability of the doctrine of collateral estoppel, the broad purposes of that doctrine and the public policy underlying it must be kept in sight. The public policy is, of course, that there must be an end to litigation. Once parties have had a full and fair opportunity to litigate an issue before a competent tribunal, they should not be permitted to relitigate that issue. This policy is primarily for the benefit of the public and not merely for the benefit of the litigants themselves.[6]

The unusual character of the proceeding in the Court of Appeals seems to create certain difficulties which are more apparent than real. An examination of the main aspects of the proceeding reveals a general pattern which brings it into closer relationship with the more usual types of litigation.

The question of the power or jurisdiction of the Court of Appeals to conduct the proceedings with respect to the alleged fraudulent procurement of the judgments of affirmance is fundamental. But that question seems to have been definitely settled by the statement of the Supreme Court in Universal Oil Co. v. Root Refining Co., 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447, in which it said: "The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question." Likewise there can be no question that the issue of the fraudulent procurement of the judgments of affirmance in the Root case was squarely before the Court of Appeals, and that that issue was considered and determined by the court after a full and extensive hearing. It is clear also that the parties to this suit were present in the proceedings in the Court of Appeals. Universal was, so to speak, an original party, and Whitman came in by way of intervention. The fact of intervention in itself does not necessarily make any difference in the application of the doctrine of collateral estoppel.[7] Both parties had the opportunity to present their evidence and contentions; in particular, Universal was advised of the position of Whitman on this particular issue and had the opportunity to dispute and repel it. The issue itself was essential to the determination of the matter before the Court of Appeals. Thus it appears that the criteria for the application of the doctrine of collateral estoppel have been sufficiently met.[8]

The defendant nevertheless argues most strenuously against the application of the doctrine to this case, and has presented numerous contentions in support of its argument, which will now be considered.

6. See Buromin Co. v. National Aluminate Corp., D.C., 70 F.Supp. 214, and United States v. Silliman, 3 Cir., 167 F.2d 607, certiorari denied 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379.

7. See Restatement of the Law of Judgments, Sec. 79, Comment f.

8. United States v. Silliman, 3 Cir., 167 F.2d 607, certiorari denied 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379, presents a situation somewhat analogous to that in the case at bar, and indicates the propriety of applying the doctrine of collateral estoppel to somewhat unusual situations. The court says, at page 619 of 167 F.2d: "We think, further, that the public policy of holding parties to one day in court is one which has recently found firm support and sound extension by the court whose authority binds us."

Defendant contends that the Court of Appeals had no jurisdiction to make a binding adjudication. There seems to be little doubt that a judgment entered without jurisdiction is without validity and has no force by way of estoppel.[9] But that the Court of Appeals had jurisdiction of the particular type of proceeding which was before it in the Root case has been established not only by the statement of the Supreme Court, which has already been quoted herein, to the effect that a federal court has inherent power to inquire into the integrity of its own judgments,[10] but by the decision of the Court of Appeals itself, which was confronted with this very same contention.[11] The court having passed upon the question of its own jurisdiction and having held that it had jurisdiction, that question would appear to be no longer open to attack in this District Court.[12]

The defendant further contends that the proceedings before the Court of Appeals were so deficient in the essentials of due process and departed so far from established standards governing litigation in the federal courts between adverse parties that the application of the doctrine of collateral estoppel would work injustice.

The Court of Appeals for this Circuit has discussed in some detail in its opinion in the case of United States v. Silliman, 167 F.2d 607, certiorari denied 335 U.S. 825,[13] 69 S.Ct. 48, 93 L.Ed. 379, a number of cases in which courts have declined to apply the doctrine because of certain deficiencies in the earlier proceedings.[14] The common factor in most of those cases seems to have been that the second court was of the opinion that the first court and the proceedings in it were of such a character that it could not be reasonably said that the parties had been afforded a full and fair hearing of the issues. The desirability for such a limitation in the application of the doctrine seems obvious, but the question is whether this case is one falling within the scope of such a limitation.

Defendant points to a number of particulars in which it asserts the proceedings before the Court of Appeals fell short of or departed from accepted standards of litigation. It contends that there was no right of appeal; that there were no pleadings of the type usually associated with civil litigation in a nisi prius court; that the court itself acted as prosecutor as well as judge; that counsel for Universal were admonished that they had an obligation to assist the court in its investigation; that the defenses of the statute of limitations and laches were not available to Universal; that there was no opportunity to demand a jury trial, and that the rules of evidence were not observed.

That the proceedings in the Court of Appeals were of an unusual character is, of course, obvious. Fortunately it is an extremely rare occurrence when a court must inquire as to the integrity of its own actions. The proceedings in the Court of Appeals involved such an inquiry but it is clear that the proceedings contemplated something more. It is evident that the Court of Appeals in adopting the procedure that it did had in mind the admonition given by the Supreme Court in its opinion in Universal Oil Co. v. Root Refining Co., 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447: "* * * if the rights of parties are to be adjudicated in such an investigation, the usual safeguards of adversary proceedings must be observed. * * *"

The proceedings partook of the nature of adversary proceedings. It is true that there were no pleadings or parties in the ordinary sense, but if the surface appearances are penetrated, the presence of adversary parties and of issues established by written statements in the nature of pleadings is discernible. I am satisfied also that the

9. Mitchell v. Village Creek Drainage Dist., 8 Cir., 158 F.2d 475.

10. 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447.

11. 3 Cir., 169 F.2d 514, 522.

12. Chicot County Dist. v. Bank, 308 U.S. 371, 377, 60 S.Ct. 317, 84 L.Ed. 329; Stoll v. Gottlieb, 305 U.S. 165, 171, 172, 59 S.Ct. 134, 83 L.Ed. 104.

13. See footnote 8.

14. 167 F.2d 607, 614 and 615.

usual safeguards of adversary proceedings were in fact observed. Universal had notice and ample opportunity to be heard and to be represented in the proceedings. The fact that the court called upon all counsel including those appearing for Universal to aid it in its investigation and not to stand upon technicalities in the particular interests of their clients does not seem to me to have detracted materially from essential compliance with established standards of fairness in litigation. Nor does the formulation by the court of "charges" to be tried appear to be of sufficient significance to establish a material departure from such established standards.

 Defendant places some emphasis upon the alleged absence of a right of appeal from the determination of the Court of Appeals. There was, of course, a limited right of review, by way of a petition for a writ of certiorari, but there was no unqualified right of appeal. However, it seems reasonably clear that there is no vested right of appeal.[15] If a party is given a right to appeal, but is in fact denied that right, such denial of the right may, as is argued by defendant, be a denial of due process,[16] but the absence of such a right in the first instance does not, as has been observed, seem to be a denial of due process. Defendant also contends that the fact that a party could not appeal from an adjudication has been specified as one of the reasons for denying the effect of collateral estoppel to that adjudication in a subsequent proceeding. I have examined the authorities cited by defendant in support of this contention, but I am of the opinion that such a broad proposition as this cannot properly be deduced from them. The rule rather seems to be that where a party has a right of appeal but is unable for some reason to exercise it or cannot exercise it with respect to the particular issue upon the adjudication of which reliance is sought to be placed in the later

proceeding, the doctrine of collateral estoppel may not be applied.[17]

 The inability of the defendant to apply for trial by jury in the Court of Appeals is also relied upon by the defendant. There is, of course, no constitutional right to trial by jury in every type of proceeding.[18] The fact that the defendant could have demanded a trial by jury in some other type of proceeding in which the issue of the fraudulent procurement of the affirmance of the Root judgments might have been tried, and could perhaps in that other proceeding have also availed itself of the defenses of laches or statute of limitations, is, in my opinion, immaterial to the question of the application of collateral estoppel. Could it be successfully contended that if that issue had been determined by this court in an action which was equitable in nature and in which there was consequently no right to trial by jury, such a determination could have no subsequent effect by way of collateral estoppel? Clearly not. Likewise, the unavailability of the defense of laches or statute of limitations would be of no moment, unless perhaps it could be shown that the determination of the first court was based upon evidence of facts of such staleness as to make it untrustworthy and the determination not one entitled for that reason to recognition as res judicata. It does not seem to be seriously suggested, however, that the unavailability of those defenses had the effect of rendering the decision and mandate of the Court of Appeals invalid.

Accordingly, without discussing in further detail certain other contentions made by the defendant with respect to the nature of the proceedings in the Court of Appeals, it is sufficient to say that I have concluded that all the usual safeguards of adversary proceedings were present in the proceedings in the Court of Appeals and that there is no sufficient basis for the contention that there was such a departure from es-

---

15. Baltimore & Pacific Railroad Company v. Grant, 98 U.S. 398, 401, 25 L.Ed. 231.

16. Defendant cites among other cases Cochran v. Kansas, 316 U.S. 255, 257, 62 S.Ct. 1068, 86 L.Ed. 1453, and Frank v.

Mangum, 237 U.S. 309, 327, 35 S.Ct. 582, 59 L.Ed. 969, in this connection.

17. Restatement of Judgments, Sec. 69(2).

18. See Ex parte Wall, 107 U.S. 265, 289, 2 S.Ct. 569, 27 L.Ed. 552.

tablished standards in litigation as to make the doctrine of collateral estoppel inapplicable here. The fact that the Court of Appeals itself strongly suggested that its determination of the issue of the fraudulent procurement of the judgment of affirmance would be binding upon Universal and Whitman in the present action[19] further strengthens this conclusion.

As contrasted with the view here found that the action of the Court of Appeals of this Circuit on the question of fraud is binding upon this court, one may consider the effect of a different ruling. If the action of the Court of Appeals on the question of fraud be not res adjudicata in this court, then this court enters upon a full hearing of the question of fraud practiced upon the Court of Appeals—precisely the same question which has already been determined by that court itself. An extended hearing in this court on the question of fraud practiced on the Court of Appeals presumably would include all of the testimony heretofore given or such as may have survived the flux of time and still be available. If this court should reach the conclusion on the testimony then before it that no fraud had been practiced on the Court of Appeals, such finding would have no tendency to impugn or affect the prior and contrary finding of the Court of Appeals itself. An appeal from the action of this court in such a case and involving the same parties and the same subject matter would create a situation so anomalous as to show its incorrectness.

One further contention of Universal is that by intervening in the proceeding in the Court of Appeals "for all purposes" Whitman has split its cause of action, and that if the position that it has taken at this hearing is sustained, the present action must be dismissed. It is elementary that the law does not sanction the splitting of a cause of action.[20] But the mere fact that an issue embedded in this action was before the Court of Appeals in an entirely different proceeding, and that Whitman intervened in that proceeding after the institution of this action, does not present a case of splitting of a cause of action. Whitman sought no individual relief in the Court of Appeals; it simply participated, as an adversary of Universal, no doubt, in a proceeding which was already pending and which would have proceeded to a conclusion with or without the presence of Whitman. Whitman has not made its claim the subject of two suits, and there has consequently been no splitting of its cause of action.

An appropriate order may be submitted.

19. 3 Cir., 169 F.2d 514, 525.

20. Brand v. Ogden-Howard Co., 1 W.W. Harr.,Del., 88, 101, 111 A. 370, 375.