**SUN-TEK INDUSTRIES, INC., a Florida Corporation, Plaintiff,**

v.

**KENNEDY SKY-LITES, INC., a Florida Corporation and Kennergy Corporation, a Florida Corporation, Defendants.**

**No. 82-469-ORL-CIV-11.**

United States District Court,
M.D. Florida,
Orlando Division.

Nov. 21, 1991.

William H. Shawn, Shawn, Berger & Mann, Washington, D.C., Robert B. Nadeau, Jr., Akerman, Senterfitt & Eidson, Orlando, Fla., for plaintiff.

Joel H. Sharp, Jr., Frederick J. Ward, Beth Ball, Baker & Hostetler, Orlando, Fla., David G. Hanlon, Shackleford, Farrior, Stallings, & Evans, P.A., Tampa, Fla., for defendants.

## ORDER ON MOTION FOR CONSOLIDATED JUDGMENT ON THE MANDATE AND PROFFER

KOVACHEVICH, District Judge.

This cause of action is before the Court on Plaintiff, Sun–Tek Industries, Inc.'s (hereafter "Sun–Tek") motion for entry of consolidated judgment on the mandate and proffer, filed on August 3, 1991, and opposition thereto, filed on September 12, 1991.

### FACTS

This case was initiated approximately 9 years ago when Sun–Tek sued Defendants, Kennedy Sky–Lites, Inc. and Kenergy Corporation (hereafter "Defendants"), for patent fraud, antitrust violations, and rescission of a license agreement allegedly forced upon Sun–Tek in earlier litigation. The case went to trial in July 1986, and the jury returned a unanimous verdict in favor of Sun–Tek. This Court entered judgment on the verdict in October 1986, and rescinded Defendants' patent license agreement for fraud.

Subsequent to the entry of judgment, this Court found this case to be exceptional under the provisions of 35 U.S.C. § 285. Additional proceedings were held, after which this Court awarded Sun–Tek $447,-716.37 in attorneys' fees. Defendants appealed the final judgment and judgment on attorneys' fees to the Court of Appeals for the Federal Circuit.

Defendants also requested from this Court an ex parte supersedeas bond reduction. In exchange for the bond reduction order, Defendants made several commitments to Sun–Tek. In September 1987, this Court held hearings based on allegations that Defendants had violated the bond reduction order. This Court determined that Defendants had failed to provide documentation they undertook to furnish under the bond reduction order. Defendants were required to post additional security by this Court's order entered September 29, 1987.

Meanwhile, the Court of Appeals for the Federal Circuit reversed and remanded, *inter alia* this Court's finding of exceptional

case under 35 U.S.C. § 285. *Sun–Tek Industries, Inc. v. Kennedy Sky–Lites, Inc.,* 848 F.2d 179 (Fed.Cir.1988). The Court of Appeals held that this Court lacked jurisdiction to enter the exceptional case finding more than 10 days after entry of the final judgment, without reservation of jurisdiction under Fed.R.Civ.P. 59(e).

On remand, this Court held further proceedings concerning Defendants' alleged misconduct and fraud under Fed.R.Civ.P. 60(b). By Order entered September 30, 1988, this Court entered the mandate of the Court of Appeals; found the mandate did not require restitution of the judgment Sun–Tek obtained in its action for fraud against Defendants; found that Defendants had failed to seek any modification or correction of such mandate; took judicial notice of the sanctions imposed by the Court of Appeals on Defendants' counsel in their appeal of this Court's order entered September 29, 1987; found it had jurisdiction to entertain ancillary proceedings against Defendants' president, Kent Weisner, for the purpose of ordering him to show cause why he should not be held personally liable to Sun–Tek for damages and related misconduct; and initiated evidentiary proceedings on the issue of damages and attorneys' fees and costs.

Sun–Tek submitted its evidence of additional attorneys' fees and costs incurred by Defendants' misconduct. Sun–Tek further alleged additional damages incurred as a result of Defendants' fraud and other misconduct before this and other Courts. On January 3, 1989, additional evidentiary hearings were held before this Court. Sun–Tek presented testimonial and documentary evidence of the attorneys' fees and costs it incurred before this Court following this Court's order of March 23, 1987. That order found that Defendants and their counsel had violated the order entered by this Court on September 29, 1987. Sun–Tek also submitted a proffer on testimonial and documentary evidence of the compensatory damages it suffered through Defendants' fraud committed in the Patent and Trademark Office (PTO), in procurement of the license agreement to which Sun–Tek was formally bound to the Defendants, and in numerous instances of misconduct during litigation. Such damages included legal fees and costs incurred by Sun–Tek in a state court action initiated by Defendants some 11 years ago and legal fees and costs Sun–Tek incurred in resisting Defendants' attempt to obtain specific performance of the license agreement this Court subsequently found fraudulent. Sun–Tek also introduced evidence of attorneys' fees and costs incurred in bringing its two antitrust counts against Defendants in this case.

Sun–Tek also proffered expert testimony establishing the financial damages it sustained through Defendants' fraudulent conduct. These damages included lost profits, lost investment opportunities, and the like.

On January 31, 1989, this Court granted Sun–Tek's application for $189,464.77 in attorneys' fees and costs. This amount represented the legal fees and costs incurred by Sun–Tek before this Court following this Court's order of March 23, 1987. However, this Court denied Sun–Tek's proffer on damages. This Court reviewed Sun–Tek's damages in the following analysis:

> [I]n this action, the damages Plaintiff suffered largely include the substantial attorneys' fees and costs it incurred in defending the two state court actions Defendants brought in their attempt to enforce the license agreement subsequently stricken for fraud. Plaintiff, through its president, established it incurred attorneys' fees and costs of $24,745.93 in the first action initiated by Defendants in 1980 and $33,124.50 in the second such action initiated by Defendants in 1982.
>
> Plaintiff also introduced evidence of the fees and costs it incurred in prosecuting the antitrust counts before this Court. Such fees and costs were $192,000.00 and were not part of an earlier award of attorneys' fees and costs under the first exceptional case finding this Court made in the Amended Final Judgment entered March 3, 1987. Plaintiff's antitrust counts were the subject of a directed verdict for Defendants at trial. The directed verdict was based upon

Plaintiff's failure to introduce at trial evidence supporting the antitrust violations. Defendants prevented Plaintiff from presenting such evidence because they employed their license and settlement agreement to obtain from this Court a ruling *in limine* preventing the introduction of such evidence. It was only at the conclusion of trial that the full scope of Defendants' fraud became apparent to this Court, too late to allow any resurrection of Plaintiff's antitrust action.

Plaintiff also adduced testimony from its expert witness on damages. Plaintiff's witness presented a series of calculations based upon Plaintiff's tax returns. The calculations demonstrated the damages Plaintiff suffered through a diversion of its profits to pay the legal fees necessary to defend the various actions threatened or initiated by Defendants. The average return on net worth calculations presented by Plaintiff's expert witness, Edward Mizerek, of the accounting firm, Coopers & Lybrand yielded total damages of $545,464.00 suffered by Plaintiff.

*Memorandum Opinion and Order*, at 10 and 11.

In addition, this Court determined that Mr. Mizerek's testimony was credible and persuasive in establishing that Sun–Tek had suffered financial damages for lost profits in the amount of $545,464.00. This Court also addressed punitive damages by considering the nature, extent, and enormity of the wrong committed by the Defendants; the intent of the Defendants in committing it; and the circumstances surrounding the transaction or transactions. This Court held that the conduct of the Defendants had disgracefully manipulated the legal system in this country during the course of this case. However, this Court was unable to do total justice at that time because it lacked the power and jurisdiction to do so. Therefore, this Court regrettably denied Sun–Tek's proffer.

On March 28, 1991, the Court of Appeals ruled on Defendants latest appeal. In *Sun–Tek Industries, Inc. v. Kennedy Sky-Lites, Inc.*, 929 F.2d 676 (Fed.Cir.1991), the Court of Appeals first held that Defendants were entitled to restitution of the original attorneys' fees award to Sun–Tek in the amount of $447,716.37. Second, the Court of Appeals affirmed this Court's award of attorney fees against the Defendants in the amount of $189,464.77 for post-judgment vexatious conduct finding that this Court did not abuse its discretion in its second finding of an exceptional case under 35 U.S.C. § 285.

## DISCUSSION

Sun–Tek now moves this Court for entry of consolidated judgment on the mandate and proffer. In deciding this motion, it must first be determined whether the doctrine of res judicata prohibits entry of such judgment.

The doctrine of res judicata establishes as a general rule that if an issue is decided by an appellate court, expressly or by necessary implication, those determinations of law will be binding on remand and on any subsequent appeal. *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659 (5th Cir.1974). In the present case, the Court of Appeals for the Federal Circuit did not decide whether this Court had jurisdiction for determination on damages. Neither Sun–Tek nor the Defendants appealed this Court's ruling that it did not have proper jurisdiction. Res judicata does not prevent this Court from reconsidering its previous jurisdictional ruling in light of new precedent.

Since res judicata does not apply, it must next be determined whether this Court now has jurisdiction to enter judgment on the proffer. Since this Court's previous ruling on this matter, the United States Supreme Court has decided *Chambers v. NASCO, Inc.*, —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), in which it carefully defined the inherent powers of the court in a case very similar to the present proceedings.

In *NASCO*, the defendant, Chambers, committed frequent and severe abuses of process before a district court and other *fora*, including an independent federal reg-

ulatory commission. *NASCO* involved a purchase agreement between Chambers, as seller, and NASCO, as buyer. The agreement provided for the sale of a television facility and broadcast license. Chambers sought to back out of the deal, and NASCO took legal action. Chambers and his attorney continuously abused the judicial process in order to block or delay the sale. Among other things, Chambers manipulated the rules of the district court to prevent NASCO's access to the remedy of specific performance. *Chambers v. NASCO, Inc.*, 111 S.Ct. 2123, 2128, (*citing NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 623 F.Supp. 1372, 1383 (W.D.La.1985). In addition, Chambers and his attorney created a trust with Chambers' sister as trustee and Chambers' three adult children as beneficiaries. Chambers' then directed a transfer to the trust of the two tracts of land at issue. Days later, a leaseback agreement was entered into so that Chambers' corporation could continue in possession of the land, and the station could continue to operate. Chambers' continued to abuse the judicial process by ignoring contempt orders and filing meritless motions and pleadings designed to delay the action.

Chambers also undertook an appeal to the United States Court of Appeals for the Fifth Circuit in another attempt to frustrate the district court's authority and increase NASCO's fees and costs of prosecuting its action. The court found the appeal frivolous and imposed appellate sanctions, under Fed.R.App.P. 38, including attorneys' fees and double costs. After noting several instances in which Chambers attempted to delay, oppress, harass, and increase NASCO's expenses, the Supreme Court noted that such conduct could not be reached by Fed.R.Civ.P. 11. In addition, Chambers filing of false and frivolous pleadings was not apparent until after trial making it impossible to assess sanctions at the time of filing.

In *NASCO,* the Supreme Court reconfirmed the inherent power of the federal judiciary to act against perpetration of fraud upon it. *Chambers v. NASCO, Inc.,* 111 S.Ct. 2123, 2132 (citing *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322

U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944)). In addition, the Court also discussed the exceptions to the American Rule considered in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 259, 95 S.Ct. 1612, 1623, 44 L.Ed.2d 141 (1975). The Court explained:

[A] court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' *Alyeska, supra,* at 258–259 [95 S.Ct. at 1622–1623] (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129 [94 S.Ct. 2157, 2165, 40 L.Ed.2d 703] (1974)). *See also Hall v. Cole,* 412 U.S. 1, 5 [93 S.Ct. 1943, 1946, 36 L.Ed.2d 702] (1973); *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, n. 4 [88 S.Ct. 964, 966, n. 4, 19 L.Ed.2d 1263] (1968) (*per curiam*). In this regard, if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party, *Universal Oil [Products Co. v. Root Refining Co.],* *supra* [328 U.S. 575], 580 [66 S.Ct. 1176, 1179, 90 L.Ed. 1447], as it may when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order,' n. 10 *Hutto [v. Finney],* 437 U.S. [678], at 689, n. 14 [98 S.Ct. 2565, 2573, n. 14, 57 L.Ed.2d 522]. The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicating judicial authority without resort to the [*28] more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.' *Ibid.*

*Id.,* 111 S.Ct. at 2133.

In affirming the United States Court of Appeals for the Fifth Circuit, the Supreme Court also explained:

[M]uch of the bad-faith conduct by Chambers, however, was beyond the reach of the rules (Fed.R.Civ.P. 11), his entire course of conduct throughout the

lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court, and the conduct sanctionable under the rules was intertwined within conduct that only the inherent power could address. In circumstances such as these in which all of a litigant's conduct is deemed sanctionable, requiring a court first to apply rules and statutes containing sanctioning provisions to discreet occurrences before invoking·inherent power to address remaining instances of sanctionable conduct would serve only to foster extensive and needless satellite litigation, which is contrary to the aim of the rules themselves....

*Id.* at 2136 (citations omitted).

The course of conduct and facts in this case bear striking resemblance to those considered by the Supreme Court in *NASCO*. The Defendants continuously abused the judicial process in order to personally attack Sun–Tek, and its President, J. William Powell.[1] Defendants repeatedly sought to perpetrate a series of frauds on this Court and other courts, among other venue. Such pattern of fraud began with Defendants' first state court lawsuit against Sun–Tek in which the Defendants perpetrated their fraud by inducing Sun–Tek to sign the license agreement, since rescinded by this Court. Sun–Tek incurred $24,745.93 in attorneys' fees and costs in its defense of that action.

A second instance of fraud occurred days after Sun–Tek initiated this action. Defendants filed an action for specific performance of their fraudulently obtained license agreement in an attempt to avoid jurisdiction by this Court. Sun–Tek incurred $33,124.50 in attorneys' fees and costs before Defendants abandoned their lawsuit.

A third instance of fraud occurred before this Court when Defendants obtained a directed verdict of Sun–Tek's two antitrust counts based upon a motion *in limine* which ruled inadmissible critical pre-license agreement evidence supporting the antitrust counts. Sun–Tek incurred $192,-000.00 in attorneys' fees and costs up to and including the time the directed verdict was granted. As a result of these three instances of fraud on the part of the Defendants, Sun–Tek incurred $249,870.43 in attorneys' fees and costs.

In addition, review of the record of this case reveals instances of witness intimidation, hand signals during trial, the suspicious disappearance of a key witness, and other misrepresentations to this Court. In a post-verdict deposition, witness Ken Zoep revealed Defendants' previous counsel had threatened to "make a monkey" of him, if he testified for Sun–Tek. This Court also observed two instances of jury-perceived hand signals to witnesses while they testified at trial. Additionally, Mr. Lee Walls, a key witness, suspiciously left on a Caribbean cruise before the trial began. Mr. Walls remained out of the country for the entire trial. Finally, the Defendants violated the terms of the bond reduction order they obtained from this Court *ex parte*. All throughout the history of this case, this Court, when possible, repeatedly warned the Defendants about such misconduct, but to no avail.

Similar to *NASCO*, this case also includes a frivolous appeal and sanctions imposed by a United States Court of Appeals under Fed.R.App.P. 38. The Court of Appeals for the Federal Circuit has imposed sanctions resulting from the Defendants' conduct and has affirmed the finding of an exceptional case during the second remand. However, the finding of an exceptional case under 35 U.S.C. § 285 only applies to the patent related issues before this Court. Section 285 does not provide a remedy of sanctions for Defendants' fraudulent behavior before the state court in prior proceedings to enforce the license agreement or before this Court during the antitrust rulings and other proceedings. The inherent power of the court must be relied upon to appropriately compensate Sun–Tek for expenses incurred as a result of Defendants' conduct.

**1.** During the course of this stressful litigation, this young man, President of Sun–Tek, died of a heart attack in his early thirties.

In *NASCO*, the Supreme Court allowed sanctions to be awarded after the conclusion of litigation where the Court could not have warned the offender when the misconduct occurred. The *NASCO* decision also noted that an appropriate hearing should be afforded to the offender and the Court should render detailed factual findings sufficient to "personalize" the offender's responsibilities.

This Court has timely acted in admonishing the fraudulent conduct on the part of the Defendants. Several evidentiary hearings have been held to entertain evidence of fraudulent conduct. Sanctions have been imposed where the patent code conferred such jurisdiction. Prior to the *NASCO* ruling, this Court considered the proffer on damages presented by Sun–Tek. A full evidentiary hearing was held, and detailed factual determinations were made which "personalized" Defendants' responsibilities. Afterwards, this Court reluctantly denied an award to Sun–Tek because of an apparent lack of jurisdiction. In *NASCO*, the Supreme Court provided the necessary jurisdiction needed by this Court pursuant to the inherent powers of the court.

In addition to the attorneys fees and costs petitioned for in prior proceedings before this Court, Sun–Tek incurred additional attorneys' fees and costs in the amount of $102,347.63. This amount includes legal fees and costs incurred between November 26, 1988 and January 31, 1989 in the amount of $32,310.31. These legal fees and costs could not be presented before this Court entered its Memorandum Opinion and Order on January 31, 1989.

This amount also includes attorneys' fees and costs incurred during the two consolidated appeals undertaken by the Defendants. These appeals resulted in the Court of Appeals granting the Defendants restitution of the original award of attorneys' fees and costs, and affirming this Court's finding of exceptional case on the second remand. In defending these appeals, Sun–Tek incurred $92,648.01 in attorneys' fees and costs. Since half of these consolidated proceedings involved the exceptional case finding, Sun–Tek is entitled to one-half of their legal fees and costs, or $46,324.01.

Finally, this amount includes attorneys' fees and costs in the amount of $47,426.62 incurred while apprising this Court of its jurisdiction to award the damages proffered in the January 1989 proceedings. Sun–Tek is entitled to one-half of these legal fees and costs, or $23,713.31.

Defendants continually abused the judicial process throughout these proceedings. Much of this misconduct was not detected until late in the proceedings when sanctions under appropriate rules and statutes were not applicable. Only the inherent powers of this Court can do total justice. Therefore, Sun–Tek's motion for entry of consolidated judgment on the mandate and proffer is hereby granted. The Defendants are entitled to restitution pursuant to the Court of Appeals mandate in the amount of $447,-716.37 plus interest. Sun–Tek is entitled to the judgment affirmed by the Court of Appeals in its mandate in the amount of $189,588.71 plus interest. Sun–Tek is also entitled to attorneys' fees and costs petitioned for in their proffer in the amount of $249,870.43. Finally, Sun–Tek is entitled to the attorneys' fees and costs awarded under 35 U.S.C. § 285 and *NASCO* in the amount of $102,347.63. Therefore, Sun–Tek is entitled to a net consolidated judgment in the amount of $30,231.43. The consolidated judgment is broken down in detail in the following table:

| | | | |
|---|---|---|---|
| 1. | Judgment for Defendants of Restitution Ordered by CAFC | $447,716.37 | |
| | Interest from 09/30/88 through 08/05/91 Based on Treasury Rate on 09/22/88 of 8.04% | 110,573.24 | |
| | Total Award | | $558,289.61 |
| 2. | Less: Judgment for Plaintiff Affirmed by CAFC | [189,588.71] | |
| | Interest from 01/31/89 through 08/05/91 Based on Treasury Rate on 01/12/89 of 9.16% | 46,838.21 | |
| | Total Award | | [236,302.98] |

| | | | |
|---|---|---|---|
| 3. | Net Difference in Defendants' and Plaintiff's Judgments with Accrued Interest Through August 5, 1991 | | $321,986.63 |
| 4. | Less: Attorneys' Fees and Costs Awarded Under 35 U.S.C. § 285 and *NASCO*: | | |
| | 4.1 Plaintiff's Balance of Attorneys' Fees and Costs 11/26/88–01/31/89 | $32,310.31 | |
| | 4.2 Plaintiff's Attorneys' Fees and Costs Awardable on Appeal | 46,324.01 | |
| | 4.3 Plaintiff's Attorneys' Fees and Costs Awardable on Remand | 23,713.31 | |
| | Subtotaled Attorneys' Fees and Costs | | [102,347.63] |
| 5. | Less: Judgment of Attorneys' Fees and Costs on Damages Proffered | | [249,870.43] |
| | **NET CONSOLIDATED JUDGMENT FOR PLAINTIFF** | | **$30,231.43** |

---

ORDERED that the motion for consolidated judgment on the mandate and proffer is granted.