**Morris HERRING; Raymond Herring; James N. Corbett; Luis Valenzuela; Armando Alfaro, and Sherman Montgomery, Plaintiffs–Appellants,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant–Appellee.**

No. 94–15779.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 1995.

Decided Dec. 26, 1995.

---

Conrad Herring, San Diego, California, for plaintiffs-appellants.

Lawrence G.D. Scarborough, Brown & Bain, Phoenix, Arizona, for defendant-appellee.

Before: CHOY, WIGGINS, and LEAVY, Circuit Judges.

CHOY, Circuit Judge:

Appellants Morris Herring et al. ("the shareholders") appeal the summary judgment in favor of the Federal Deposit Insurance Corporation ("FDIC") in their independent action to set aside a state-court judgment for fraud on the court. We affirm.

## I. Factual and Procedural Background

In September 1981, the Arizona Superintendent of Banks placed Southwestern Bank ("Southwestern") in receivership. On May 1, 1990, the FDIC as court-appointed receiver petitioned the Arizona Superior Court to enter an order approving payment of a final liquidating dividend, payment of interest on claims, sale of any newly discovered assets, disposal of Southwestern's books and records, and termination of the receivership.

Appellants, a group of Southwestern shareholders, filed objections. The shareholders complained of faulty accounting and insufficient information regarding an alleged $530,124 loss, and requested the court to order a more specific accounting or allow the shareholders leave to examine the receivership records.

After hearings and the filing of post-petition briefs, the Arizona Superior Court overruled the shareholders' objections. The court held that the disputed item of $530,124 consisted of losses sustained on the liquidation of assets and that the FDIC was not subject to surcharge for this amount. The court further held that the FDIC was entitled to interest on its own claim but that the receivership funds were insufficient to pay the interest. Moreover, the court found that

the funds would be insufficient to cover the FDIC's claim even if the $530,124 were disallowed. Finally, the court held that the FDIC had not violated any fiduciary duties as receiver. On August 14, 1991, the court terminated the receivership.

On appeal, the Arizona Court of Appeals granted the FDIC's motion to strike portions of the shareholders' reply brief alleging "conspiracy, fraud, theft, misrepresentation and committing and suborning perjury" as issues newly raised on appeal. The Court of Appeals affirmed the trial court's decision, while deciding not to "address the volley of new and untimely claims raised in [the shareholders'] reply brief."

The shareholders petitioned for review before the Arizona Supreme Court on the grounds that the FDIC perpetrated a fraud on the court, and that the Court of Appeals erred by striking portions of their reply brief. The Arizona Supreme Court denied the petition for review.

The shareholders then filed in Arizona Superior Court this independent action pursuant to Rule 60(b) to set aside the judgment for fraud on the court, which the FDIC removed to federal district court. The shareholders alleged that the FDIC 1) knowingly submitted false accounting figures when it petitioned the court to terminate the receivership; 2) presented perjured testimony to the court concerning a bank receivership asset account labeled "other assets/judgments"; 3) submitted false final summary statements of the income and liquidation losses for the liquidated assets of Southwestern; 4) submitted documentation to justify the $530,124 loss after the close of the hearings and after the shareholders no longer had an opportunity to refute the FDIC's evidence; and 5) submitted a false affidavit by Kevin Ahart, an FDIC employee, regarding judgments written off during the receivership.

The shareholders focused upon two losses the FDIC claimed on judgments against debtors. First, the shareholders alleged that the FDIC received $83,784 in principal and interest from the successor-in-interest to a loan to a Mr. Harkins, while it claimed a $41,210.44 loss. Second, the shareholders asserted that a claimed $154,000 loss for a judgment against the League of United Latin American Citizens ("LULAC") had already been written off by Southwestern five years prior to the appointment of FDIC as receiver. The shareholders further alleged that the FDIC collected $40,000 in full satisfaction of the LULAC judgment yet fraudulently claimed that it collected nothing.

The FDIC moved for summary judgment. Following briefing and oral argument, the district court granted summary judgment on two grounds: first, that res judicata and collateral estoppel barred the shareholders' action, and second, that the FDIC committed no fraud on the court. The shareholders now appeal.

## II. Analysis

Because the shareholders cannot recover funds on their underlying claim, they have no standing and we therefore affirm the district court's summary judgment against their fraud on the court claim. We may affirm on any basis the record supports, including one the district court did not reach. *USA Petroleum Co. v. Atlantic Richfield Co.,* 13 F.3d 1276, 1279 (9th Cir.1994).

### A. The shareholders have no interest in the litigation.

The shareholders' Supplemental Brief indicates that approximately $367,000 was available for distribution, while the FDIC and other creditors have interest claims of approximately $1,500,000. Thus even if the $530,124 were disallowed, the resulting $603,000 deficiency would still leave the shareholders nothing. The state trial court so found, noting that "there are not sufficient funds to pay the interest to which the FDIC is entitled, or even interest to 1985, even if this item [the disputed $530,124] were to be disallowed." Arizona Superior Court Minute Entry, June 28, 1991.

The shareholders respond that the fraud affects more than the $530,124. If the $530,124 were disallowed, the FDIC would accumulate less interest, and the trial court might also refuse to award the FDIC any interest

or its receivership expenses of $883,282. If so, the shareholders might recover funds.

The FDIC replies, and this court finds persuasive, that the Arizona courts have established that, even if the FDIC engaged in fraud, no correction could generate any funds for the shareholders. The Arizona courts have already calculated the interest due if the $530,124 were disallowed. Moreover, the shareholders point to nothing beyond a vague reference to "public policy" to indicate that the state court would have discretion to deny the FDIC the interest and expenses it was otherwise due. The shareholders have no chance of recovering on their underlying claim, and thus no interest in the litigation.

B. A party must have an interest in the litigation to raise a fraud on the court claim.

The FDIC argues that the shareholders must have some chance of recovering funds to have standing to assert a fraud on the court claim. The shareholders respond that (1) the district court granted them standing, (2) Rule 60(b) expressly grants parties standing to bring an independent action for fraud on the court, and alternatively (3) a court has inherent power sua sponte to investigate fraud on the court.

■ The shareholders allege that, since the FDIC argued standing in its reply brief to the district court, the district court must have "granted" standing to plaintiffs before considering the merits of the summary judgment motion. It is irrelevant whether or not the district court implicitly held that the shareholders have standing; we review questions of standing de novo. *Barrus v. Sylvania*, 55 F.3d 468, 469 (9th Cir.1995).

We have held that a nonparty's interests must be "directly affected" to raise a claim of fraud on the court. *See Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 777 (9th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 778, 130 L.Ed.2d 673 (1995). The shareholders must explain why this requirement should not apply to parties as well.

■ The shareholders argue that Rule 60(b) expressly grants standing to parties to assert an independent action to set aside a

judgment for fraud on the court. We disagree. Rule 60(b) does not *grant* anyone standing to bring an independent action; it merely does not restrict any standing a party otherwise has. "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding ..." Fed.R.Civ.P. 60(b). Rule 60(b) does not grant the shareholders standing which they otherwise do not have.

■ A party with no interest in the litigation generally has no standing. The shareholders cannot come to court just to hold the FDIC accountable for its alleged fraud; "an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Whitmore v. Arkansas,* 495 U.S. 149, 160, 110 S.Ct. 1717, 1725–1726, 109 L.Ed.2d 135 (1990) (quoting *Allen v. Wright,* 468 U.S. 737, 754, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984)). The shareholders could not recover funds even if their fraud allegations were true; the shareholders thus lack standing to challenge that fraud.

■ The shareholders argue alternatively that, even if they have no standing, the court has inherent power sua sponte to investigate fraud on the court, and treat the shareholders as friends of the court. *Universal Oil Prods. Co. v. Root Refining Co.,* 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946). The present case differs from *Universal Oil* in two ways. First, in *Universal Oil* there was a justiciable case or controversy, because non-parties had an interest in the preclusive effect of the prior litigation. Attorneys who represented interested non-parties to the prior litigation moved to set aside the judgment because evidence suggested bribery of the judge. The court accepted the services of these attorneys as *amici curiae. Id.* at 578, 66 S.Ct. at 1178. In contrast, here no one has a recognizable interest in the fraud claim; whether the FDIC committed fraud or not will only affect the size of the FDIC's unpaid claim. A court's inherent power to inquire into the integrity of judgments "implies the

prior existence of a justiciable case or controversy." *Root Refining Co. v. Universal Oil Prods. Co.,* 169 F.2d 514, 521–22 (3d Cir. 1948), *cert. denied,* 335 U.S. 912, 69 S.Ct. 481, 93 L.Ed. 444 (1949). If no one has an interest in the underlying litigation, no justiciable case or controversy exists.

■■■ Second, in *Universal Oil* the court which sua sponte investigated the fraud was the same court which had suffered the fraud. *Universal Oil Prod. Co. v. Root Refining Co.,* 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946). In contrast, the shareholders here ask a federal court sua sponte to investigate fraud on a state court. Perhaps a court has inherent power to investigate fraud perpetrated on itself, but a court should not sua sponte investigate fraud on another court when no interested party or non-party has requested the investigation.

In *Alexander v. Robertson,* this court rejected a possible fraud on the court claim, in part because the plaintiff had no chance of recovering on the underlying claim. 882 F.2d 421, 425 (9th Cir.1989). "Robertson cannot succeed on his cross-claims against Fraser and Protective. In essence, then, setting aside the judgment would be a 'fruitless' gesture that would hardly bolster the public's perception of the judicial process." *Id.* The reasoning in *Alexander* buttresses this court's conclusion that the shareholders cannot assert a fraud on the court claim because they have no interest in the litigation; setting aside the judgment would indeed be a "fruitless gesture."

Because we find the shareholders lack standing, we do not reach the other issues raised in this appeal.

The judgment of the district court is AFFIRMED.