Mr. Justice STRONG
delivered the opinion of the court.
Addressing ourselves to the first of the questions presented by the record—the question of jurisdiction—it may be remarked that clearly the Circuit Court had no jurisdiction of the crime of murder committed within the district of Kentucky, unless it was conferred by the third section of the act of Congress of April 9th, 1866.
It must be admitted that the crimes and offences of which the District Courts are, by this section, given exclusive jurisdiction, are only those which are against the provisions of the act, or those enumerated in the second and sixth sections, and that the “ causes, civil and criminal,” over which jurisdiction is, by the second clause of the section, conferred upon the District and Circuit Courts of the United States concurrently, are other than those Of which exclusive jurisdiction is given to the District Courts. They are described *591 as causes “ affecting persons who are denied, or cannot enforce in the courts or judicial tribunals of the State, or locality, where they may be, any of the rights secured to them by the first section of the act.”
Was, then, the prosecution, or indictment, against these defendants a cause affecting any such person or persons? If it was, then by the provisions of the act it was within the jurisdiction of the court, and if it was not, that court had no jurisdiction.
It was, the record shows, an indictment for the murder of Lucy Armstrong, a citizen of the United States of the African race, and it contained an averment that other citizens of the United States of the same race, witnessed the alleged murder. It contained also an averment that those other persons, namely, Bichard Foster and Laura Foster, as well as the deceased Lucy Armstrong, were, on account of their race and color, denied the right to testify against the defendants, or either of them, of and concerning the killing and murder, in the courts and judicial tribunals of the State of Kentucky.
We are thus brought to the question whether a criminal prosecution for a public offence is a cause “affecting,” within the meaning of the act of Congress, persons who may be called to testify therein. Obviously the only parties to such a cause are the government and the persons indicted. They alone can be reached by any judgment that may be pronounced. No judgment can either enlarge or diminish the personal, relative, or property rights of any others than those who are parties. It is true there are some cases which may affect the rights of property of persons who are not parties to the record. Such cases, however, are all of a civil nature, and none of them even touch rights of person. But an indictment prosecuted by the government against an alleged criminal, is a cause in which none but the parties can have any concern, except what is common to all the members of the community. Those who may possibly be witnesses, either for the prosecution or for the defence, are no more affected by it than is every other person, for any one *592 may be called as a witness. It will not be thought that Congress intended to give to the District and Circuit Courts jurisdiction over all causes both civil and criminal. They have expressly confined it to causes affecting certain persons. And yet, if all those who may be called as witnesses in a case, and who may be alleged to be important witnesses, were intended to be described in the class of persons affected by it, and if the jurisdiction of the Federal courts can be invoked by the assei’tion that there are persons who may be witnesses, but who, because of their x’ace or color, ax’e incompetent to testify in the courts of the State, thex’e is no cause either civil or criminal of which those courts may not at the option of either party take jurisdiction. The statute of Kentucky which was in existence when this indictment was found, and which denied the right of Richard Foster and Laura Foster to testify in the courts of the State, enacted as follows: “ that a slave, negro, or Indian shall be a competent witness in the case of the commonwealth for or against a slave, negro, or Indian, or in a civil case to which only negroes or Indians are parties, but in no other case.” It will be observed that this statute prohibits the testimony of colored persons either for or against a white person in any civil or criminal cause to which he may be a party. If, therefore, they ai'e persons affected by the cause, whenever they might be witnesses were they competent to testify, it follows that iix any suit between white citizens,-jurisdiction might be taken by the Fedex’al courts whenever it was alleged that a citizen of the African race was or might be an important witness. And such an allegation might always be made. So in all criminal px’osecutions against white persons a similar allegation would call into existence the like jurisdiction. Ve cannot think that such was the pui’pose of Congress in the statute of April 9th, 1866. It would seem rather to have been to afford protection to persons of the colored x’ace by giving to the Fedex-al courts jurisdiction of cases, the decision of which might injuriously affect them either in their personal, relative, or property rights, whenever they are denied in the State courts any of the rights *593 mentioned and assured to them in the first section of the act.
Nor can it be said that such a construction allows little or no effect to the enactment. On the cpntrary, it concedes to it a far-reaching purpose. That purpose was to guard all the declared rights of colored persons, in all civil actions to which they may be parties in interest, by giving to the District and Circuit Courts of the United States jurisdiction of such actions whenever in the State courts any right enjoyed by •white citizens is denied them. And in criminal prosecutions against them, it extends a like protection. We cannot be expected to be ignorant of the condition of things which existed when the statute was enacted, or of the evils which it -was intended to remedy. It is well known that in many of the States, laws existed which subjected colored men convicted of criminal offences to punishments different from and often severer than those which were inflicted upon white persons convicted of similar offences. The modes of trial were also different, and the right of trial by jury was sometimes denied them. .It is also well known that in many quarters prejudices existed against the colored race, which naturally affected the administration of justice in the State courts, and operated harshly when one of that race was a party accused. These were evils doubtless which the act of Congress had in view, and which it intended to remove. And so far as it reaches, it extends to both races the same rights, and the same means of vindicating them.
In view of these considerations we are of opinion that the case now before us is not within the provisions of the act of April 9th, 1866, and that the Circuit Court had not jurisdiction of the crime of murder committed in the district of Kentucky, merely because two persons who witnessed the murder were citizens of the African race, and for that reason incompetent by the law of Kentucky to testify in the courts of that State. They are not persons affected by the cause.
We need hardly add that the jurisdiction of the Circuit Court is not sustained by the fact averred in the indictment that Lucy Armstrong, the person murdered, was a citizen of *594 the African race, and for that reason denied the right to testify in the Kentucky courts. In no sense can she be said to be affected b}' the cause. Manifestly the act refers to persons in existence.. She was the victim of the frightful outrage which gave rise to the cause, but she is beyond being affected by the cause itself.
The conclusions to which we have come are sustained, we think, fully by the judgment of this court in United States v. Ortega,* in which the opinion was delivered by Mr. Justice Washington. It. was the case of an indictment in the Circuit Court for offering violence to the person of the Spanish’ minister, contrary to the law of nations and the act of Congress. The second section of the third article of the Constitution ordains that the judicial power of the United States shall extend to all cases affecting ambassadors, other public ministers and consuls, and that in all cases affecting ambassadors, other public ministers and consuls, the Supreme Court shall have original jurisdiction. The defendant was convicted, and on motion in arrest of judgment, the question was presented to this court (and it was the only one decided), whether it was a case affecting an ambassador, or other public minister. The court unanimously ruled that it was not. The violence out of which the indictment grew was committed upon a public minister, and he was a competent and material witness. But he was ruled to be not a person affected by the case, because it was a public prosecution instituted and conducted by and in the name of the United States, and for the purpose of vindicating the laws of nations and that of the United States, in the person of a public minister, offended by an assault committed on him by a private individual. It is, said the court, a case then, which affects the United States and the individual whom they seek to punish; but one in which the minister himself’ although he was the person injured by the assault, lias no concern, either in the event of the prosecution, or in the costs attending it. What was meant by the phrase “a case affecting,” *595 was thus early defined, and we are bound to presume that Congress, when they used the same word “ affecting ” in the act of 1866, intended to have it bear its defined meaning. This is according to a well-known rule of construction.
An attempt has, however, been made to discriminate between the words “ case affecting,” as found in the constitutional provision, and the words “ cause affecting,” contained in the act of Congress. We are unable to perceive any substantial ground for a distinction. The words “case” and “cause” are constantly used as synonyms in statutes and judicial decisions, each meaning a proceeding in court, a suit, or action. Surely no court can have jurisdiction of either a case or a cause until it is presented in the form of an action. We regard, therefore, The United States v. Ortega as an authority directly in point to the effect that witnesses in a criminal prosecution are not persons affected by the cause. It necessarily results from this that jurisdiction of the offence for which these defendants were indicted, was not conferred upon the Circuit Court by the act of Congress.
It is unnecessary, therefore, to consider the other questions presented by the record.
Judgment reversed.
The CHIEF JUSTICE was not present at the argument, and took no part in the judgment.

 11 Wheaton, 467.