163 F.3d 530
 98 Cal. Daily Op. Serv. 8959, 98 Daily Journal
D.A.R. 12,479
Arthur CALDERON, Warden of California State Prison at San
Quentin, Petitioner,
v.
The UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA, Respondent,
Horace Edwards Kelly, Real Party in Interest.
 No. 98-70569.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 23, 1998.
Decided Dec. 8, 1998.
 
 Daniel E. Lungren, Attorney General of California, Keith I. Motley, Supervising Deputy Attorney General, San Diego, California, for the petitioner.
 Maria E. Stratton, Federal Public Defender, David W. Fermino, Assistant Federal Public Defender, Los Angeles, California, for the real party in interest.
 No appearance for the respondent.
 Petition for a Writ of Mandamus to the United States District Court for the Central District of California Terry J. Hatter, Jr., District Judge, Presiding; D.C. Nos. CV-98-02722-TJH, CV-98-02723-TJH.
 Before: HUG, Chief Judge, and BROWNING, FLETCHER, PREGERSON, REINHARDT, HALL, KOZINSKI, THOMPSON, TROTT, TASHIMA, and SILVERMAN, Circuit Judges.
 Opinion by Judge TASHIMA; Concurrence by Judge THOMPSON; Concurrence by Judge SILVERMAN; Dissent by Judge HALL.
 TASHIMA, Circuit Judge:
 
 
 1
 This case comes to us in an unusual procedural posture, complicated by an atypical history. Real party in interest Horace Edwards Kelly (Kelly) was sentenced to death in two separate cases by the California state courts. See People v. Kelly, 51 Cal.3d 931, 275 Cal.Rptr. 160, 800 P.2d 516 (1990), cert. denied, 502 U.S. 842, 112 S.Ct. 134, 116 L.Ed.2d 101 (1991) (Kelly I ); People v. Kelly, 1 Cal.4th 495, 3 Cal.Rptr.2d 677, 822 P.2d 385, cert. denied, 506 U.S. 881, 113 S.Ct. 232, 121 L.Ed.2d 168 (1992) (Kelly II ). For most of the past several years, Kelly's attorneys have been attempting to determine Kelly's competency to assist them in preparing his first federal habeas corpus petitions. In Calderon v. United States Dist. Court, 127 F.3d 782 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1395, 140 L.Ed.2d 653 (1998) (Kelly III ), a three-judge panel granted the petitioner Warden's (State) first petition for a writ of mandamus and preemptively held that Kelly's first habeas petitions--insofar as they might challenge his convictions and death sentences--could never be filed because of the time bar of 28 U.S.C. § 2244(d)(1). Kelly, nonetheless, later did file his first petitions. When the district court equitably tolled the time bar of § 2244(d)(1) so that it could reach the merits of Kelly's claims,[1] the same three-judge panel granted in part the State's second petition for writ of mandamus. Calderon v. United States Dist. Court, 1998 WL 309923 (9th Cir. 1998) (Kelly IV ). We granted en banc review.[2]
 
 
 2
 The history of this case, combined with its procedural posture, require us to address several issues of concern in habeas corpus law. First, we must clarify whether a writ of mandamus can properly be issued to prevent the consideration of a first habeas petition. Second, we address the holding in Kelly IV, that res judicata applies in the habeas context. Third, we discuss what kinds of legal proceedings qualify as a "case" for purposes of the Supreme Court's holding that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 1996 U.S.C.C.A.N. (110 Stat.) 1214, does not apply to "cases pending" at the time of the statute's enactment. See Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2061, 138 L.Ed.2d 481 (1997). Finally, we address whether Kelly's habeas proceedings, or petitions, were timely commenced.
 
 I. History of the Case
 
 3
 The opinions in Kelly I, Kelly II, Kelly III and Kelly IV fully explain the history of this case, and we summarize it here only briefly. Kelly was convicted and sentenced to death in Riverside County, California, for the murder of Danny O. Kelly I, 51 Cal.3d at 940, 275 Cal.Rptr. 160, 800 P.2d 516. He was also convicted and sentenced to death in San Bernardino County, California, for the murders of Sonia Reed and Ursula Houser. Kelly II, 1 Cal.4th at 511, 3 Cal.Rptr.2d 677, 822 P.2d 385. Each of these death sentences has been treated independently by the State, which is why we refer throughout this opinion to Kelly's first habeas petitions, in the plural.
 
 
 4
 Following the state court affirmances of his convictions and death sentences, Kelly turned to federal court. In 1992 and 1993, acting on an application for the appointment of counsel to initiate habeas proceedings and for a stay of execution filed by Kelly, the district court stayed Kelly's scheduled executions and appointed counsel to represent him.[3] No habeas petitions were filed at that time. On April 24, 1996, Congress enacted the AEDPA, which imposes a one-year statute of limitations on the filing of a habeas corpus petition that challenges a state conviction. 28 U.S.C. § 2244(d)(1). The Supreme Court has held, however, that the AEDPA does not apply to cases that were pending on the AEDPA's effective date, i.e., any case pending on April 24, 1996. See Lindh, 117 S.Ct. at 2061; see also Jeffries v. Wood, 114 F.3d 1484, 1494 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997).
 
 
 5
 From 1992 to 1997, Kelly's proceedings remained in the district court. During this period, Kelly did not file a petition for habeas corpus. On September 18, 1997, a three-judge panel of this court granted the State's first petition for a writ of mandamus and ordered the dismissal of Kelly's proceedings. See Kelly III, 127 F.3d at 787. The panel majority reasoned that there was no point to the proceedings because any habeas petition that Kelly might eventually file would be time-barred under the AEDPA. The panel majority first noted that under Lindh, the AEDPA does not apply to cases pending on April 24, 1996, but, applying existing circuit precedent, the panel majority concluded that a habeas case is "pending" only when an actual petition for habeas corpus has been filed--and Kelly had not yet filed his petitions. He had merely requested the appointment of counsel to prepare and file his petitions. Second, the panel majority rejected Kelly's argument in favor of equitable tolling of § 2244(d)(1)'s one-year statute of limitations. Third, the panel majority acknowledged that the one-year limitations period would not bar Kelly's claim under Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), that he is currently incompetent to be executed, but it found that claim to be premature for federal review. Kelly III, 127 F.3d at 787. Thus, the writ of mandamus was granted. The district court, as it was ordered to do, then vacated the stay and dismissed the proceedings.
 
 
 6
 The state courts then set new execution dates for Kelly and the State petitioned the state trial court to determine Kelly's present competence to be executed. A divided jury found that Kelly was sane. Kelly then filed two federal habeas petitions which are the subject of this mandamus petition. These petitions raised the Ford claim and also raised numerous challenges to Kelly's Riverside and San Bernardino convictions and death sentences. The district court held that the one-year limitations period of the AEDPA was tolled; consequently, that none of Kelly's claims was time-barred. This order prompted the State to file a second petition for a writ of mandamus. The same three-judge panel that heard Kelly III again granted the writ. See Kelly IV, 1998 WL 309923. In the panel majority's view, Kelly III had resolved the question of the applicability of the AEDPA's statute of limitations and was res judicata to any later reconsideration of that issue. Id. 1998 WL 309923. Accordingly, Kelly IV ordered the dismissal of all claims, except Kelly's Ford claim, and ordered the stay of execution to be vacated to the extent that it was based on Kelly's non-Ford claims. Id. 1998 WL 309923.
 
 
 7
 We then granted en banc review of Kelly IV.
 
 II. The Writ of Mandamus
 
 8
 The role of the court of appeals in this case is strongly constrained by the fact that we are considering a petition for a writ of mandamus and not reviewing a final judgment. Normally, in an appeal, we receive a case after the district court has resolved every claim presented, after the parties have had the opportunity to raise every argument they choose, and after the facts have been fully developed. A petition for mandamus, however, is an original proceeding and, thus, is different from the normal appellate process in all of those respects. These differences become especially significant in death penalty cases. We do not know whether Kelly's habeas petitions have merit; we lack the benefit of the historical hindsight that we usually possess when we review a case after the facts have been developed; and the briefing before us has necessarily been limited to those issues raised by the State in its petition for mandamus.
 
 
 9
 Because of the difficult position in which a mandamus petition places the court of appeals, we have repeatedly characterized mandamus as an "extraordinary" or "drastic" remedy. E.g., Calderon v. United States Dist. Court (Gordon), 107 F.3d 756, 761 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997); Armster v. United States Dist. Court, 792 F.2d 1423, 1431 (9th Cir.1986). The Supreme Court has admonished that mandamus must not become a substitute for the normal appellate process. Kerr v. United States District Court, 426 U.S. 394, 402, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953). To provide guidance for when mandamus may be permissible, we have adopted a five-part test. In Bauman v. United States Dist. Court, 557 F.2d 650 (9th Cir.1977), we delineated the five factors that support the issuance of a writ of mandamus:
 
 
 10
 (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires.
 
 
 11
 (2) The petitioner will be damaged or prejudiced in a way that is not correctable on appeal....
 
 
 12
 (3) The district court's order is clearly erroneous as a matter of law.
 
 
 13
 (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.
 
 
 14
 (5) The district court's order raises new and important problems, or issues of law of first impression.
 
 
 15
 Id. at 654-55 (citations omitted).
 
 
 16
 We have repeatedly employed the five Bauman factors in mandamus cases, e.g., Taiwan v. United States Dist. Court, 128 F.3d 712, 717 (9th Cir.1997); McDaniel v. United States Dist. Court, 127 F.3d 886, 888 (9th Cir.1997), although we have never foreclosed the possibility that other factors might be relevant in an exceptional case. See Calderon v. United States Dist. Court (Hayes), 103 F.3d 72, 74 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997). In general, we are guided by the Bauman factors, and they should be weighed together, as is appropriate, based on the facts of the individual case. Star Editorial, Inc. v. United States Dist. Court, 7 F.3d 856, 859 (9th Cir.1993). Except for supervisory mandamus cases, the absence of factor three--clear error as a matter of law--will always defeat a petition for mandamus. Calderon v. United States Dist. Court (Taylor), 134 F.3d 981, 984 (9th Cir.), cert. denied, --- U.S. ----, 119 S.Ct. 274, 142 L.Ed.2d 226 (1998); Taiwan, 128 F.3d at 717; Executive Software No. Am., Inc. v. United States Dist. Court, 24 F.3d 1545, 1551 (9th Cir.1994). The other factors may be more or less relevant, depending on the precise claims at issue, but we have noted that factors one and two usually travel together, Bauman, 557 F.2d at 654, while factors four and five seldom do. Admiral Ins. Co. v. United States Dist. Court, 881 F.2d 1486, 1491 (9th Cir.1989).
 
 
 17
 Here, we face a petition for mandamus that asks us to order the dismissal of Kelly's first habeas petitions, including almost all the constitutional claims therein, before the district court can consider any of those claims on the merits. As explained below, we find that all five factors counsel against the issuance of mandamus; accordingly, we deny the petition.
 
 
 18
 A. Factors One and Two: Other adequate means for relief and
 
 
 19
 non-correctable prejudice.
 
 
 20
 Because these factors are similar, we consider them together. When we say that a litigant has no adequate means for relief other than mandamus, or that he or she will be prejudiced in a way not correctable on appeal, we do not mean that the litigant has been forced by an erroneous ruling of the district court to suffer unnecessary cost and delay. Mortgages, Inc. v. United States Dist. Court, 934 F.2d 209, 211 (9th Cir.1991); In re Sugar Antitrust Litig., 559 F.2d 481, 484 & n. 1 (9th Cir.1977). That happens every single time a litigant loses a summary judgment motion that he or she should have won, every time a district court mistakenly thinks federal jurisdiction exists when it does not, and every time a meritorious motion for judgment as a matter of law is denied. Undoubtedly, the cost and delay occasioned by such erroneous rulings, in the aggregate, are quite significant and can be quite burdensome to the individual litigant. If such harm could support mandamus, however, then mandamus would no longer be an extraordinary remedy and we will have effectively abandoned our tradition against piecemeal appeals.
 
 
 21
 Thus, in order to satisfy either of the first two factors, a litigant must demonstrate some burden imposed by a clearly erroneous district court order, other than the mere cost and delay that are the regrettable, yet normal, features of our imperfect legal system. For example, these factors could be satisfied if the litigant's claim will obviously be moot by the time an appeal is possible, e.g., Medhekar v. United States Dist. Court, 99 F.3d 325, 326-27 (9th Cir.1996), or when the person affected by the district court's order will not have the ability to appeal. E.g., Oregonian Publ'g Co. v. United States Dist. Court, 920 F.2d 1462, 1465 (9th Cir.1990). But, in general, the mere annoyance and cost of having to litigate will not support mandamus. Mortgages, Inc., 934 F.2d at 211.
 
 
 22
 We see no reason why a first habeas petition in a death penalty case should be a unique exception to our general unwillingness to grant mandamus merely to avoid the normal cost and delay associated with litigation. Now that Congress has enacted a statute of limitations for the filing of habeas petitions, see 28 U.S.C. § 2244(d)(1), and given our holding that this limitations period can be equitably tolled in the proper circumstances, see Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1288-89 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1389, 140 L.Ed.2d 648 (1998), there will undoubtedly be a number of cases in which the putative habeas petitioner's ability to qualify for equitable tolling will be in doubt. The inevitable prejudice that will accrue to the State in such cases is that executions will sometimes be delayed because the district court mistakenly tolled the one-year limitations period and proceeded to consider the petitioner's claims on the merits, when it should not have done so. This kind of delay is going to happen often enough that, if this circumstance were sufficient to support the issuance of a writ of mandamus, the writ would no longer be an extraordinary remedy. It would become all too commonplace and almost routine in death penalty cases.[4]
 
 
 23
 We acknowledge that the prejudice to the State stemming from a delayed execution is different in character from the prejudice to a litigant in, for example, a trademark, a product liability or an air crash case, who is erroneously forced to endure a trial when he or she should have prevailed on summary judgment. On the other hand, however, the interest of the capital habeas petitioner in having his first habeas petition heard completely and fully is also different in kind. Given the near-prohibition against the filing of successive petitions now mandated by the AEDPA, see 28 U.S.C. § 2244(b), and the irreversible consequences that flow from the rejection of a capital habeas petitioner's first petition, we are constrained to assign less importance to the State's interests in Bauman factors one and two when we deal with a first petition from a sentence of death. McDaniel, 127 F.3d at 889 ("[W]hile the State probably cannot correct on appeal any negative effects it sustains as a result of compliance with the district court's ... order, this factor carries little weight compared with the needs of an incarcerated capital habeas petitioner...."). Indeed, the Supreme Court has stressed that a capital habeas petitioner is entitled to a full consideration of all of his or her claims in his or her first petition before a stay of execution can be lifted. Lonchar v. Thomas, 517 U.S. 314, 319-20, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996). Lonchar supports our reluctance to truncate the district court's consideration of a capital petitioner's first habeas petition by piecemeal review of selected issues by way of mandamus.
 
 
 24
 Thus, we find that the first two Bauman factors weigh against the State. Kelly has never had a federal court rule on his constitutional claims stemming from his convictions and death sentences. It would be inappropriate for us to prevent that consideration merely to accommodate the State's desire for a quick execution.
 
 
 25
 Indeed, mandamus would be particularly inappropriate in this case because a stay of execution is inevitable. Kelly's claim of present incompetence to be executed became ripe and exhausted only in 1998. Under Stewart v. Martinez-Villareal, --- U.S. ----, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), Kelly's presentation of the Ford claim to the district court is a first petition; under the AEDPA, this claim is clearly not time-barred; and under Lonchar, Kelly is therefore entitled to a stay. Thus, the prejudice that the State seeks to avoid cannot be avoided. A delay in Kelly's execution is inevitable. To be sure, the extent of this delay may depend on whether the district court considers only Kelly's Ford claim, or whether it considers all of Kelly's claims. At this point, however, the special need for mandamus is so vitiated, because the writ cannot really give the State the relief it desires, that factors one and two weigh strongly against mandamus.
 
 
 26
 B. Factors Four and Five: Oft-repeated error and new
 
 
 27
 questions of law.
 
 
 28
 The fourth and fifth Bauman factors are the opposite sides of the same coin, Admiral Ins., 881 F.2d at 1491, but it is certainly possible that, as here, neither of them might exist in a particular case. The fifth factor--the existence of a new and important question of law--is not present because this court's decision in Beeler (which was decided prior to Kelly III ) had already confirmed the availability of equitable tolling of the AEDPA's time bar. Thus, the district court's invocation of tolling in this case is merely the application of Beeler to a particular set of facts. It does not support the existence of the fifth Bauman factor.
 
 
 29
 The fourth factor is not present either, despite the disagreement between the district court and the three-judge panel about how broadly to read the panel's opinion in Kelly III. The district court apparently took Kelly III to foreclose only those grounds for tolling actually discussed in Kelly III, while the panel majority gave Kelly III a much broader reading. See Kelly IV, 1998 WL 309923. A disagreement about the scope of a prior appellate ruling is not an uncommon occurrence in a hierarchical judicial system, and it does not normally merit correction by mandamus. If such a disagreement happened repeatedly, we might label it an "oft-repeated error" or a "persistent disregard of the federal rules," Bauman, 557 F.2d at 655, thereby justifying mandamus. But that has not happened in these cases.
 
 
 30
 C. Factor Three: Clear error as a matter of law.[5]
 
 
 31
 We have reserved this Bauman factor for last because it is the most complex. A majority of the three-judge panel found clear error because, in its view, Kelly III flatly precluded reconsideration of the AEDPA's time bar and the question of equitable tolling. See Kelly IV, 1998 WL 309923.
 
 
 32
 While we disagree with the panel majority that Kelly III has this preclusive effect, we do note that Kelly IV looks a lot like Kelly III: It has the same parties; the same facts; several of the same issues; and, until we granted rehearing en banc, the same judges. These similarities between Kelly III and Kelly IV suggest the possible applicability of one or more of an array of legal doctrines that are designed to prevent endless litigation of the same claims--specifically, law of the case, res judicata, and abuse of the writ. Obviously, if we found one of these doctrines applicable, that could resolve our clear error inquiry. If not, we must then proceed to determine the timeliness of Kelly's habeas petitions.
 
 1. Law of the Case
 
 33
 Kelly suggests that law of the case is the appropriate framework to decide whether Kelly III precludes the reconsideration of equitable tolling in Kelly IV. He argues that Kelly III lacks this preclusive effect because in Kelly IV he has raised new grounds for equitable tolling, grounds that were not raised or considered in Kelly III. Kelly then cites the familiar rule that law of the case prevents reconsideration only of those issues expressly resolved, or necessarily resolved by implication, in the prior decision. See Milgard Tempering, Inc. v. Selas Corp., 902 F.2d 703, 715 (9th Cir.1990).
 
 
 34
 We can dispense with law of the case as an impediment to considering the timeliness of Kelly's first petitions for one simple reason. Law of the case never prevents an en banc court from disagreeing with the prior decisions of a three-judge panel. Jeffries, 114 F.3d at 1492; Watkins v. United States Army, 875 F.2d 699, 704 n. 8 (9th Cir.1989) (en banc). Thus, even if Kelly III were law of the case as to the three-judge panel in Kelly IV, it is not law of the case as to the en banc court. Accordingly, we need not consider whether Kelly III and Kelly IV are truly the same "case" for purposes of law of the case, nor need we decide what issues Kelly III expressly resolved or resolved by necessary implication. The law of the case established by a three-judge panel simply does not bind the en banc court.
 
 2. Res Judicata
 
 35
 The three-judge panel in this case relied on res judicata to bar reconsideration of the effect of the AEDPA's statute of limitations. See Kelly IV, 1998 WL 309923. The panel majority noted that res judicata bars the reconsideration not only of those questions resolved in a prior case, but also of those that could have been raised and resolved in the prior case. Id. Thus, the panel majority was unmoved by Kelly's argument that he was now raising different grounds to support the application of equitable tolling from those considered in Kelly III. From the panel majority's perspective, that was irrelevant, since Kelly concededly could have raised those grounds in the prior mandamus case.
 
 
 36
 We reject the panel majority's use of res judicata because it contravenes the longstanding rule that res judicata has no application in habeas corpus. The entire point of a habeas petition that challenges a state conviction is to relitigate issues that were raised in the state case and resolved against the petitioner. Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[6] Obviously, then, res judicata, in the traditional sense of that doctrine, cannot apply in habeas corpus; otherwise, nearly every habeas petition would be barred by the original trial. See Brown v. Allen, 344 U.S. 443, 458, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (holding that state proceedings are not res judicata to federal habeas cases).
 
 
 37
 The Supreme Court has confirmed that even a first habeas petition is not res judicata to subsequent petitions. McCleskey v. Zant, 499 U.S. 467, 479, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Rather, federal courts have created a doctrine known as "abuse of the writ" that serves as a substitute for res judicata by limiting the availability of successive habeas petitions when a prior one has been denied. Id. at 480-88, 111 S.Ct. 1454. But the Court has been very clear that abuse of the writ is a substitute for res judicata, and that res judicata, strictly speaking, does not attach to the denial of a first habeas petition. Id. at 479-88, 111 S.Ct. 1454.
 
 
 38
 If we characterize Kelly III as a habeas proceeding, then McCleskey squarely forecloses any possibility that res judicata could apply to this case. The panel majority, however, preferred to characterize Kelly III as something else (what exactly it was, the panel majority did not say), reasoning that it could not be a habeas proceeding because Kelly had never filed a habeas petition. See Kelly IV, 1998 WL 309923. While that characterization of Kelly III is debatable, see Kelly IV, 1998 WL 309923 (Tashima, J., dissenting), we need not struggle to characterize Kelly III. What matters is that this case is a habeas proceeding. McCleskey categorically rejected res judicata from a first federal habeas petition to a second; thus, if even those potentially identical cases cannot trigger res judicata, it follows that nothing else can. We join the Seventh and Eighth Circuits in holding that res judicata does not apply to a petition for habeas corpus, regardless of the nature of the prior proceeding. See Boyer v. White, 763 F.2d 1012 (8th Cir.1985); Heirens v. Mizell, 729 F.2d 449, 456 (7th Cir.1984).
 
 
 39
 We also reject the State's argument that the traditional rule against applying res judicata in habeas cases has somehow been abrogated by the AEDPA. The State seizes on a part of one sentence in Felker v. Turpin, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), in which the Supreme Court described one effect of the AEDPA: "The new restrictions on successive petitions constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.' " Id. at 2340. Because the State omits every word after "rule" when it quotes from Felker in its brief, it generates the illusion that Felker welcomed res judicata into habeas law. But once we read the entire sentence, we see that the Court was stating merely that the AEDPA statutorily codified the abuse of the writ doctrine, and it used the words "modified res judicata rule" as a shorthand description of that doctrine.
 
 
 40
 Indeed, even after the AEDPA, it is still true that federal habeas relief exists in order to relitigate claims that were previously decided in state court, so it is quite fanciful to suggest that the AEDPA sub silentio introduced res judicata into habeas law. Further, the AEDPA includes specific provisions to govern successive habeas petitions, see 28 U.S.C. § 2244(b), and res judicata would render those provisions largely superfluous. We conclude that even after the AEDPA, the rule is as it has always been: Res judicata does not apply to habeas cases.
 
 3. Abuse of the Writ
 
 41
 Having rejected law of the case and res judicata, we turn to the last doctrine that might have prevented the district court from reconsidering Kelly III 's holding that Kelly is time-barred from challenging his state convictions and death sentences in federal court: Abuse of the writ. Generally, this doctrine forbids the reconsideration of claims that were or could have been raised in a prior habeas petition. McCleskey, 499 U.S. at 489, 111 S.Ct. 1454. Abuse of the writ evolved as a judicially created equitable doctrine, but it is now codified by the AEDPA. Felker, 116 S.Ct. at 2340; 28 U.S.C. § 2244(b).
 
 
 42
 Kelly's present habeas petitions are not, and cannot be, an abuse of the writ because they are the first federal petitions he has ever filed. Boyer, 763 F.2d at 1012. We realize that in opposing the State's petition for mandamus in Kelly III, Kelly theoretically could have raised every possible argument against holding his petitions time-barred. But we do not think that Kelly's failure to present all possible grounds for relief in that defensive posture transforms his later habeas petitions into an abuse of the writ. The reason why successive petitions are often deemed abusive is that the first petition provided an adequate opportunity for the petitioner to raise all of his claims, and the petitioner simply chose not to take advantage of that opportunity. McCleskey, 499 U.S. at 493, 111 S.Ct. 1454. This case is different because opposing a petition for a writ of mandamus is not an adequate substitute for raising every claim that one might prudently raise in a habeas petition. It was the State that sought mandamus and that set the agenda, i.e., selected the issues to be contested, before the court of appeals. We think this reversal of the litigants' positions, combined with the transfer of agenda-setting power to the State, made Kelly's opportunity to respond to the petition for a writ of mandamus an inadequate substitute for a first habeas petition. Accordingly, Kelly III does not turn Kelly's first habeas petitions in Kelly IV into an abuse of the writ.
 
 4. Timeliness
 
 43
 Having concluded that Kelly III does not preclude reconsideration of the application of the AEDPA's one-year statute of limitations, we now turn to that issue. The AEDPA does not apply to "cases pending" at the time of the statute's enactment. Lindh, 117 S.Ct. at 2061; Jeffries, 114 F.3d at 1494. In Beeler, we held that a habeas case was not "pending" merely because a petition for the appointment of counsel to prepare and file a habeas petition had been filed. 128 F.3d at 1287 n. 3. Rather, Beeler held that a case is pending within the meaning of Lindh only when a petition for a writ of habeas corpus has been filed. Id.
 
 
 44
 Beeler acknowledged some tension between its holding and the Supreme Court's decision in McFarland v. Scott, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994). McFarland held that for purposes of 21 U.S.C. § 848(q)(4)(B), which provides for the appointment of counsel for capital defendants in post-conviction proceedings, a "post conviction proceeding" is pending when a request for the appointment of counsel has been made. Id. at 856, 114 S.Ct. 2568. Beeler limited McFarland 's broad conception of a proceeding to 21 U.S.C. § 848(q)(4)(B), and it held that for purposes of the AEDPA (and consequently Lindh ), a case begins only with the filing of a petition for habeas corpus. 128 F.3d at 1287 n. 3.
 
 
 45
 It was Beeler that initiated Kelly III and Kelly IV 's struggle with equitable tolling. Given Beeler, it was clear that Kelly's case was not pending when the AEDPA was enacted; therefore, the one-year statute of limitations applied to this case. Kelly III correctly noted that in light of Beeler, Kelly's hopes for federal habeas relief depended on equitable tolling, at least for his non-Ford claims. See Kelly III, 127 F.3d at 785.
 
 
 46
 Recently, however, the Supreme Court decided Hohn v. United States, 524 U.S. 236, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998), a decision that has vitiated Beeler 's holding. Hohn 's narrow holding was that the Supreme Court has jurisdiction to review decisions of the courts of appeals denying applications for certificates of appealability under 28 U.S.C. § 2253(c). Id. at 1971. But the Court's reasoning was somewhat broader. The Court based its decision on 28 U.S.C. § 1254, which states that "Cases in the courts of appeals may be reviewed by the Supreme Court" by several methods, including certiorari. Asked whether an application for a certificate of appealability constituted a "case," the Court unhesitatingly answered yes:
 
 
 47
 There can be little doubt that Hohn's application for a certificate of appealability constitutes a case under § 1254(1). As we have noted, "[t]he words 'case' and 'cause' are constantly used as synonyms in statutes ..., each meaning a proceeding in court, a suit, or action." Blyew v. United States, 80 U.S. 581, 13 Wall. 581, 595, 20 L.Ed. 638 (1871). The dispute over Hohn's entitlement to a certificate falls within this definition. It is a proceeding seeking relief for an immediate and redressable injury, i.e., wrongful detention in violation of the Constitution. There is adversity as well as the other requisite qualities of a "case" as the term is used in both Article III of the Constitution and the statute here under consideration.
 
 
 48
 Id. at 1972. Of particular relevance to Beeler 's holding that a petition for the appointment of counsel and a motion for a stay of execution do not start a habeas case is the following passage from Hohn:
 
 
 49
 We further disagree with the contention ... that a request to proceed before a court of appeals should be regarded as a threshold inquiry separate from the merits which, if denied, prevents the case from ever being in the court of appeals. Precedent forecloses this argument. In Ex Parte Quirin, 317 U.S. 1 (1942), we confronted the analogous question whether a request for leave to file a petition for a writ of habeas corpus was a case in a district court.... We held the request for leave constituted a case in the district court over which the court of appeals could assert jurisdiction, even though the district court had denied the request. We reasoned, "[p]resentation of the petition for judicial action is the institution of a suit. Hence the denial by the district court of leave to file the petitions in these causes was the judicial determination of a case or controversy...."
 
 
 50
 Id. at 1974-75.
 
 
 51
 In the wake of Hohn, we must overrule Beeler and Kelly III 's holding that a habeas corpus "case" is not pending until the habeas petition itself has been filed. Hohn 's holding, as well as its reliance on Ex Parte Quirin that a threshold request for leave to file a petition for habeas corpus commences the habeas "case," is simply irreconcilable with Beeler and Kelly III. Like a request for leave to file a habeas petition, a petition for the appointment of counsel to prepare and file a petition for a writ of habeas corpus, accompanied by a motion for a stay of execution under McFarland, is a threshold action that presents a "case" to the district court. By analogy to Hohn, it follows that a petition for appointment of counsel under McFarland creates a pending habeas case.[7] Accordingly, we overrule those portions of Beeler and Kelly III that held that a habeas corpus case is pending only when the habeas petition itself has been filed. A petition for the appointment of counsel to prepare and file a habeas petition, coupled with a motion for a stay of execution, also suffices.
 
 
 52
 Given this reading of Hohn and our partial overruling of Beeler and our overruling of Kelly III, it is clear that the AEDPA, including its statute of limitations, does not apply to the district court proceedings that Kelly filed in 1992 and 1993, i.e., cases No. CV 92-5420 TJH and No. CV 93-2951 TJH. Those cases were dismissed by the district court under the compulsion of the writ of mandamus issued in Kelly III, which we have now overruled. Thus, in retrospect, the district court's decision to consider Kelly's habeas petitions on the merits is not clear error.[8]
 
 
 53
 Under the circumstances of this case, one remedy available to Kelly is to move in the district court to set aside those dismissals under Fed.R.Civ.P. 60(b)(6),[9] and to permit or deem the habeas petitions filed in district court cases No. CV 98-2722 TJH and No. CV 98-2723 TJH to be filed in the earlier-filed cases nunc pro tunc as of the date they were filed in the 1998 cases. See United States v. Alpine Land & Reservoir, Co., 984 F.2d 1047, 1049 (9th Cir.1993) (Rule 60(b)(6) applies "where extraordinary circumstances prevented a party from taking timely action"). Although such a motion is addressed to the discretion of the district court, id., because the original proceedings were dismissed under the compulsion of Kelly III and our mistaken holding in footnote 3 of Beeler, which we have now overruled, good and just cause would exist to set those dismissals aside.[10]
 
 5. Tolling
 
 54
 In the alternative, we hold that it was not clear error as a matter of law for the district court to hold that Kelly's habeas petitions, filed in 1998, were not barred by the AEDPA's one-year statute of limitations. Indeed, the district court's finding that the statute of limitations should be equitably tolled under Beeler was clearly correct.
 
 
 55
 In Beeler, we held that the time bar of 28 U.S.C. § 2244(d)(1) can be tolled "if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." 128 F.3d at 1288-89 (citing Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir.1996)).
 
 
 56
 In its order of June 3, 1998, the district court "Ordered that the motions for equitable tolling be, and hereby is, Granted based on prior counsels' reliance on this Court's order staying all proceedings other than the issue of Petitioner's sanity." There are several reasons why this order is clearly correct, rather than clearly erroneous.
 
 
 57
 First, on January 9, 1995, as part of its order that Kelly be mentally evaluated, the district court ordered "that all other aspects of this case be, and hereby are, Stayed pending final determination by this Court of the Petitioner's mental capacity to proceed." The only reasonable reading of this order was that it prohibited Kelly's attorneys from filing a habeas petition, which is how the district court itself construed it. Explaining its decision to grant equitable tolling in Kelly IV, the district court noted: "[T]his court indeed ordered a stay of all the proceedings other than the issue of the petitioner's sanity.... Reasonably, it could not be expected that counsel would go forward [with filing the habeas petitions]." See also Kelly III, 127 F.3d at 788 ("Few things put the doing of an act so 'clearly beyond the prisoner's control,' as Beeler requires, as a court order prohibiting the doing of that act.") (Tashima, J., dissenting). This stay of the proceedings prevented Kelly's counsel from filing a habeas petition and, in itself, justifies equitable tolling.
 
 
 58
 Second, Kelly's alleged mental incompetency also justifies equitable tolling, at least until a reasonable period of time has elapsed after the district court makes a competency determination. The record discloses that Kelly has been having serious mental problems for many years. See id., at 788 & n. 1. In fact, the State agreed that a hearing was necessary to determine his present competency. See id. at 788-89.[11] Under 21 U.S.C. § 848(q)(4)(B), Kelly has a statutory right to counsel in his federal habeas proceeding. That right contemplates effective communication between lawyer and client. Murray v. Delo, 34 F.3d 1367, 1373 (8th Cir.1994) ("We do not think Congress had in mind a lawyer who would not communicate with his or her client, or who would file a petition without consultation with or authorization from the client."). A putative habeas petitioner's mental incompetency--a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control--renders the petitioner unable to assist his attorney in the preparation of a habeas petition. Such a condition could eviscerate the statutory right to counsel. Where, as here, there is a threshold showing of mental incompetency, a sufficient showing has been made for equitably tolling the statute of limitations, and we reject Kelly III 's holding to the contrary. When a putative habeas petitioner's mental competency is at issue, and the record discloses a genuine basis for concern, it is appropriate to toll the AEDPA's time bar until a reasonable period after the district court makes a competency determination.
 
 
 59
 Third, Kelly had timely, i.e., not subject to the AEDPA's statute of limitations, habeas proceedings pending at one time. As set forth in Part II.C.4, above, those proceedings were mistakenly dismissed, through no fault of Kelly, under the compulsion of the writ of mandamus issued in Kelly III. This judicial error presents an independent ground to toll the statute of limitations, for it was our mistake that deprived Kelly of the opportunity to have his first federal habeas petitions considered on the merits.
 
 
 60
 For all of these reasons, the district court correctly held that Kelly's 1998 habeas petitions, i.e., those filed in cases No. CV 98-2722 TJH and No. CV 98-2723 TJH, were entitled to the benefit of the equitable tolling of the statute of limitations. Cf. Herring v. FDIC, 82 F.3d 282 (9th Cir.) ("We may affirm on any basis the record supports, including one the district court did not reach."), cert. denied, --- U.S. ----, 117 S.Ct. 581, 136 L.Ed.2d 512 (1996).
 
 
 61
 In sum, the State has not demonstrated that the challenged orders of the district court are clearly erroneous as a matter of law.
 
 III. Conclusion
 
 62
 We hold that Kelly's original habeas proceedings, filed in 1992 and 1993, were pending at the time the AEDPA was enacted. Therefore, the AEDPA, including § 2244(d)(1)'s statute of limitations, does not apply to Kelly's original federal habeas proceedings. In the alternative, we also hold that Kelly's 1998 habeas petitions are not barred by the AEDPA's statute of limitations because the district court correctly ruled that these petitions were entitled to the benefit of the equitable tolling of the statute of limitations. The State has failed to demonstrate that any of the five Bauman factors that are needed to support issuance of the writ of mandamus exists in this case. Accordingly,
 
 
 63
 The State's petition for a writ of mandamus is DENIED.
 
 
 64
 DAVID R. THOMPSON, Circuit Judge, Specially Concurring.
 
 
 65
 I concur in the majority opinion except for the second and third reasons given for applying equitable tolling in Part II C 5.
 
 
 66
 I agree with the majority that because the district court's June 3, 1998 order stayed all proceedings other than the issue of Kelly's sanity, that order prevented Kelly's counsel from filing a habeas petition, and equitable tolling applies. I do not agree, however, that Kelly's alleged mental incompetency equitably tolled the AEDPA's one-year statute of limitations, and I would not reach the question whether equitable tolling applies as a result of the dismissal of Kelly's habeas proceedings under the compulsion of the writ of mandamus issued in Kelly III.
 
 
 67
 SILVERMAN, Circuit Judge, with whom KOZINSKI, Circuit Judge, joins, Specially Concurring.
 
 
 68
 I agree with the majority that the AEDPA's statute of limitations never should have been applied to Kelly because, under the analysis of Hohn v. United States, 524 U.S. 236, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998), his habeas case was pending prior to the enactment of the AEDPA.
 
 
 69
 However, I write separately to express my disagreement with the majority's unnecessary and wholesale rejection of res judicata in the habeas context. Both Congress and the Supreme Court have made it clear that in the absence of unusual circumstances, habeas petitioners cannot continue to litigate issues that have been or could have been litigated already in habeas proceedings. When Congress amended § 2244 of the habeas corpus statute in 1966, it specifically stated that "the purpose of these new subsections is to add to section 2244 of title 28, United States Code, provisions for a qualified application of the doctrine of res judicata." S.Rep. No. 89-1797, at 2 (1966) (emphasis added). The Supreme Court has agreed. See Calderon v. Thompson, 523 U.S. 538, 118 S.Ct. 1489, 1500-1501, 140 L.Ed.2d 728 (1998). See also Schlup v. Delo, 513 U.S. 298, 318-19, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (successive petition standard is a "qualified application of res judicata"); Felker v. Turpin, 518 U.S. 651, 116 S.Ct. 2333, 2340, 135 L.Ed.2d 827 (1996) ("the new restrictions on successive petitions constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ' "); McCleskey v. Zant, 499 U.S. 467, 486, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) ( "subparagraph (b) [to 28 U.S.C. § 2244] establishes a qualified application of res judicata").
 
 
 70
 By definition, a petition for writ of habeas corpus is a collateral attack on a final judgment. It is in that sense that res judicata does not apply to habeas corpus proceedings. That is a far cry from a rule of res judicata that prevents a habeas petitioner who has already litigated X in habeas proceeding from relitigating X in new habeas proceedings without good excuse. This case illustrates the problem. In 1992, Kelly started his first habeas proceeding by requesting the appointment of counsel. In 1997, after the AEDPA statute of limitations had run, the state moved to dismiss the proceedings on the grounds that no petition for writ of habeas corpus had ever been filed and that the time to file had run out. Kelly responded to the motion to dismiss with two arguments: First, that the AEDPA's statute of limitations did not apply to him; and second, that even if it did, the statute of limitations was equitably tolled by his incompetency. At no time did Kelly also claim equitable tolling based on his reliance on Judge Hatter's order. In fact, when this case was argued to the Kelly III panel, this revealing colloquy occurred:
 
 
 71
 Judge Tashima: Suppose, suppose, we don't agree that this is a pending case. In other words, that the AEDPA does apply to this case. Your position then is what?
 
 
 72
 Mr. Neuhoff,
 
 
 73
 Kelly's counsel: Well, at that point, this Court is entitled to ... if there is any ground appearing in the record from which the district court's decision and its exercise of discretion can be upheld then the court can deny the writ [of mandamus sought by the state] on that basis and another ground here is equitable tolling.
 
 
 74
 * * *
 
 
 75
 Judge Tashima: What appears in the record to support that?
 
 
 76
 Mr. Neuhoff: What appears in the record is that the district court has before it prima facie evidence, at least, that Mr. Kelly is: (a) incompetent to proceed and assist counsel in his habeas proceedings and (b) is incompetent to be executed.
 
 
 77
 * * *[1]
 
 
 78
 Conspicuously absent was anything from Kelly's counsel along the lines of "... and (c) Kelly or his lawyers relied in good faith on Judge Hatter's order." Judge Hatter's order, which looms so large now, wasn't even mentioned.
 
 
 79
 The upshot of that oral argument was the decision in Kelly III holding that Kelly's incompetency did not constitute grounds for equitable tolling. After Kelly III was decided, the state again moved the district court to dismiss Kelly's habeas proceedings as time-barred. This time, for the first time, Kelly raised Judge Hatter's order as a basis for equitable tolling.
 
 
 80
 One can only wonder how many additional theories of equitable tolling Kelly had in reserve. One must also wonder how this court could possibly permit him to litigate one of his grounds for equitable tolling and then, after he loses, to raise additional grounds for equitable tolling of which he was previously aware. The record in this case is devoid of any explanation of why Kelly's counsel did not raise the currently proffered ground for equitable tolling earlier, either in response to the state's motion to dismiss in the district court or in connection with the petition for writ of mandamus in this court in Kelly III. As a result, in my view, he is barred from belatedly raising it now unless his default is excused by a showing of cause and prejudice or manifest injustice.
 
 
 81
 The problem raised by the Supreme Court's decision in Hohn is a different matter. "[A] court should not reopen issues decided in earlier stages of the same litigation. The doctrine does not apply if the court is convinced that [its prior decision] is clearly erroneous and would work a manifest injustice." Agostini v. Felton, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (citations and internal quotation marks omitted). The Supreme Court's decision in Hohn, handed down after both Kelly III and Kelly IV were decided, demonstrates that Kelly should not have been deemed barred from filing his petition for writ of habeas corpus by the AEDPA statute of limitations in the first place. It would be unjust to persist in that error.
 
 
 82
 CYNTHIA HOLCOMB HALL, Circuit Judge, Dissenting.
 
 
 83
 The majority opinion expresses clear disdain for the fact that the AEDPA's statute of limitations bars Kelly from filing a first habeas petition. Unfortunately, the statute of limitations is the law.
 
 
 84
 First, the majority finds that all five factors enumerated in Bauman v. United States Dist. Ct., 557 F.2d 650, 654-55 (9th Cir.1977), counsel against the issuance of mandamus. However, this is no ordinary mandamus action. Kelly IV was simply an action to enforce the mandate of Kelly III, a decision the District Court chose to ignore. It is hornbook law that mandamus "is available to a party who has prevailed in this Court if the lower court does not proceed to execute the mandate, or disobeys and mistakes its meaning." Vendo Co. v. Lektro-Vend Corp., 434 U.S. 425, 427, 98 S.Ct. 702, 54 L.Ed.2d 659 (1978); see also Citizens National Trust & Savings Bank of Los Angeles v. United States Dist. Ct., 215 F.2d 799, 800 (9th Cir.1954) (holding that a petition for mandamus is appropriate where the District Court "violated the plain provisions of our mandate").
 
 
 85
 The real issue is whether the District Court did or did not violate this court's mandate. While the majority deems this issue "most complex," the simple fact is that the District Court allowed Kelly to file a habeas petition after this court held that such a petition was time-barred. I can conceive of no clearer violation of this court's mandate. The majority concludes that Kelly should not be precluded from filing a habeas petition because res judicata does not apply to habeas petitions, but as the panel decision made clear, "[Kelly's] prior cases did not involve true habeas corpus petition proceedings. He never got that far." Calderon v. United States Dist. Ct. (Kelly), No. 98-70569, 1998 WL 309923, slip op. at 5996 (9th Cir. June 9, 1998) ("Kelly IV "). Allowing Kelly to file a habeas petition after this court held he could not flagrantly undermines any respect for the finality of this court's judgments.
 
 
 86
 The majority also makes much of the fact, in its discussion of "abuse of the writ," that it was the state that selected the issues to be decided in Kelly III 's mandamus proceeding. This fact is wholly irrelevant. Res judicata "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Americana Fabrics, Inc. v. L & L Textiles, Inc., 754 F.2d 1524, 1529 (9th Cir.1985) (emphasis added). There is no indication that any of the defenses to the statute of limitations were unavailable at the time of Kelly III. Kelly cannot and should not be allowed to "sandbag" the judicial process by withholding defenses and presenting them seriatim whenever he requires a delay of his execution.
 
 
 87
 While I dissent from the entire opinion as it stands, I wish to point out that the portion of the opinion from which I dissent above is in fact dictum. The majority does not use its carefully crafted (but misguided) interpretation of res judicata and abuse of the writ in order to provide Kelly with a new basis for equitable tolling of the statute of limitations. Instead, the majority simply goes on to hold that the statute of limitations does not apply to Kelly at all. This holding does not depend upon the application of res judicata or abuse of the writ but upon the majority's misapplication of a recent Supreme Court case.
 
 
 88
 The majority employs an overbroad interpretation of the Supreme Court's opinion in Hohn v. United States, 524 U.S. 236, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998), to overrule Kelly IV, Kelly III, and ultimately a portion of Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1287 n. 3 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998). At the heart of the majority's error is its unreflective act of equating the word "case" as used in Hohn with the word "case" as used in Beeler; the words may appear the same, but their meanings are vastly different.
 
 
 89
 In Hohn, the Supreme Court decided whether a court of appeals decision denying an application for a certificate of appealability under 28 U.S.C. § 1253(c) constituted a "case" for purposes of Supreme Court jurisdiction under 28 U.S.C. 1254 and the "case or controversy" requirement of Article III. See 524 U.S. at ----, 118 S.Ct. at 1972. In Beeler, on the other hand, this court decided that a request for appointment of counsel and stay of execution did not constitute a habeas "case" for purposes of the AEDPA's statute of limitations. Hohn was therefore using the word "case" to interpret whether the Supreme Court had jurisdiction while Beeler was using the word "case" to interpret whether a statute of limitations had run. This distinction is crucial.
 
 
 90
 Beeler expressly held (a holding that the en banc majority does not disturb) that the AEDPA's statute of limitations was not jurisdictional. 128 F.3d at 1287-89. Indeed, the availability of equitable tolling, which the majority recognizes, depends upon the fact that the AEDPA's statute of limitations is not jurisdictional. See id. Thus, Hohn 's use of the word "case" cannot overrule Beeler 's use of the word "case" because the two courts were using this word in completely different contexts to mean completely different things.
 
 
 91
 Even if Hohn and Beeler were using the word "case" to mean the exact same thing (which they were not), the cases are so factually distinguishable as to belie the argument that one "has vitiated" the other. In Hohn, the Supreme Court merely stated that a habeas corpus petition that had been ruled upon in the District Court but denied a certificate of appealability remained a case for purposes of a petition for certiorari. The case before us deals with a request for counsel and a stay of execution where no habeas petition had been filed, and thus there was nothing that could "remain" a case.[1]
 
 
 92
 The majority overlooks another underlying rationale in Hohn: that a certificate of appealability involves adversity. See 524 U.S. at ----, 118 S.Ct. at 1972. By overlooking this rationale, the majority can in conclusory fashion state that a petition for appointment of counsel accompanied by a motion for a stay of execution is a "case," even though indigents have the mandatory right to counsel under 21 U.S.C. § 848(q)(4)(B), see McFarland v. Scott, 512 U.S. 849, 854, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994), and a stay of execution will usually be granted to allow counsel "meaningfully to research and present a defendant's habeas claims." Id. at 858, 114 S.Ct. 2568. Because the request for counsel and a stay did not involve true adversary proceedings, I would hold that, even if Hohn 's definition of a "case" applied to the proceedings before us (which it does not), no such case had been initiated before the statute of limitations expired.
 
 
 93
 For the reasons above, I respectfully dissent.
 
 
 
 [1]
 No hearing on the merits has yet been held
 
 
 [2]
 Kelly IV has been withdrawn. Calderon v. United States Dist. Court, No. 98-70569, 1998 WL 351217 (9th Cir. Jun.26, 1998)
 
 
 [3]
 This was in accordance with customary practice and Local Rules 26.8.7(b) and (c) of the Central District of California. See Brown v. Vasquez, 952 F.2d 1164, 1165 (9th Cir.1991)
 
 
 [4]
 At issue in this case is the district court's denial of the State's Rule 12(b)(6) motion to dismiss on statute of limitations grounds. There is no reason why this motion to dismiss should be treated differently, i.e., reviewed by mandamus rather than on appeal from a final judgment, than the dozens of 12(b)(6) rulings that district courts in this circuit make every day
 
 
 [5]
 In order to decide whether "clear error as a matter of law" exists, we must first examine what the law is, before deciding whether the district court clearly departed from it. See, e.g., Beeler, 128 F.3d at 1288 ("The district court's interpretation of AEDPA's limitations period was not, however, clearly erroneous. It was, rather, clearly correct."); Portillo v. United States Dist. Court, 15 F.3d 819, 822 (9th Cir.1994)
 
 
 [6]
 In fact, under the "exhaustion" requirement, a habeas petitioner must "afford the State a full and fair opportunity to address and resolve the claim on the merits." Keeney v. Tamayo-Reyes, 504 U.S. 1, 10, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (citation omitted)
 
 
 [7]
 The dissent attempts to distinguish Hohn on the ground that, because the appointment of counsel is "mandatory" and "a stay of execution will usually be granted," the "adversity" required by Hohn is missing. The attempt is misguided. First, the State could challenge whether the putative petitioner is "financially unable to obtain adequate representation," as required by 21 U.S.C. § 848(q)(4)(B) to be eligible for the appointment of counsel, an issue which would require adjudication. Second, the grant or denial of a stay of execution under 28 U.S.C. § 2251 is addressed to the discretion of the district court, again, requiring judicial resolution of the issue. While it may be correct that a stay of execution will usually be granted, it is not a ministerial or mandatory act. See McFarland, 512 U.S. at 858, 114 S.Ct. 2568 ("Section 2251 does not mandate the entry of a stay but dedicates the exercise of stay jurisdiction to the sound discretion of a federal court."). These circumstances meet the adversity requirement of Hohn. Indeed, Hohn makes no exception where the government acquiesces in the motion, relying instead on the adjudicative nature of the proceedings, rather than the actual course of litigation. See Hohn, 524 U.S. at ----, 118 S.Ct. at 1976 ("It would have made no difference had the Government declined to oppose Hohn's application for a certificate of appealability.... [P]etitions for certiorari to this Court are often met with silence or even acquiescence; yet no one would suggest this deprives the petitions of the adversity needed to constitute a case.")
 
 
 [8]
 Ironically, in its order that was the subject of Kelly III, the district court originally (and, in hindsight, correctly) held that the AEDPA did not apply to Kelly's petitions. See Kelly III, 127 F.3d at 783
 
 
 [9]
 The rule provides:
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment ... for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment.
 Fed.R.Civ.P. 60(b)(6).
 
 
 [10]
 Since the dismissals were "based" on Kelly III, which has now been overruled, these circumstances also provide sufficient grounds under Fed.R.Civ.P. 60(b)(5) (which applies when a "a prior judgment upon which it [the dismissal] is based has been reversed or otherwise vacated") to set aside those dismissals. See Tomlin v. McDaniel, 865 F.2d 209, 211 (9th Cir.1989)
 
 
 [11]
 Because of the writ of mandamus issued in Kelly III, the scheduled hearing on mental competency never took place
 
 
 [1]
 Transcript of argument of Calderon v. U.S.D.C. (Kelly), ("Kelly III "), September 5, 1997 at 13
 
 
 [1]
 The majority, in a judicial sleight-of-hand that also undermines the AEDPA's statute of limitations, holds that this court may deem the habeas petitions filed after the AEDPA's effective date as having been filed nunc pro tunc before that date in order to avoid reaching the issue of equitable tolling. See n.7, supra. This does not change the fact, however, that when the request for counsel and stay of execution were made, no habeas petition had been filed