Opinion by Judge DAVID R. THOMPSON; Concurrence by Judge FLETCHER.
DAVID R. THOMPSON, Circuit Judge:
James V. Blunk challenges the right of the State of Arizona to regulate his commercial use of non-reservation fee land owned by the Navajo Nation. Blunk, a non-Indian, leased the land from the Navajo Nation and obtained a permit from the Navajo Nation to erect billboards on the land. He erected the billboards, however, without first obtaining a permit from the Arizona Department of Transportation (the “ADOT”), the state agency with state authority to regulate the land. The ADOT told Blunk he would have to take down the billboards and then apply for a permit. Blunk refused. Instead, he sued the ADOT and its director Larry Bonine in the United States District Court in Arizona. Blunk sought a declaratory judgment that the state’s attempted regulation of the Indian Fee Land violated federal preemption and the Navajo Nation’s sovereignty.
The district court granted summary judgment in favor of the ADOT and Bo-nine. Blunk appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm. We conclude the subject land is not “Indian country,” and as a result the state may regulate Blunk’s use of it.
FACTS
Blunk operates an outdoor advertising business called Tri-State Outdoor Advertising. As part of this business, Blunk owns five billboards he erected on land owned in fee by the Navajo-Nation. The land (the “Navajo Fee Land”) is located near Winslow, Arizona, approximately ten miles from the Navajo reservation. Since acquiring the Navajo Fee Land from a private owner in 1986, the Navajo Nation has paid state and local taxes on it.
In 1989, Blunk leased a portion of the Navajo Fee Land from the Navajo Nation. Pursuant to the Navajo Nation’s land use regulations, Blunk also obtained tribal permits to erect billboards on the land. Blunk erected his five billboards on the Navajo Fee Land during 1989 and 1990.
*881 In 1990, the Navajo Nation applied to the Navajo County Board of Supervisors (the “Board of Supervisors”) for a change of zoning classification for the Navajo Fee Land to allow the erection of billboards.[3] Blunk paid the County’s fee for the application. In correspondence regarding the application for the zoning change, officials of the Navajo Nation indicated a desire that billboards on the Navajo Fee Land “conform to both Tribal and State laws[ ] and any applicable [cjounty zoning ordinance.” After the Board of Supervisors granted the change of zoning, Blunk applied to the ADOT for permits for the five billboards that he had already erected on the Navajo Fee Land. The billboards complied with the ADOT’s limits for size, spacing, and illumination, but Blunk had erected them without first obtaining a state permit.
Between 1990 and 1995, the ADOT repeatedly informed Blunk that the billboards had been erected without a state permit, in violation of Arizona’s Regulation of Outdoor Advertising Act, Ariz.Rev.Stat §§ 28-2101 to 28-2110 (1993) (current version at Anz.Rev.Stat. §§ 28-7901 to 28-7915 (1998)). The ADOT was concerned that the billboards would jeopardize federal funding under the Federal Highway Beautification Act, 23 U.S.C. § 131(Con-trol of outdoor advertising). Eventually, the ADOT informed Blunk that the ADOT was scheduling the billboards for demolition.
In response to the ADOT’s threat to demolish the billboards, Blunk filed this action in the United States District Court for the District of Arizona. Blunk sought a declaratory judgment that the ADOT was preempted by federal law and Navajo Nation sovereign interests from regulating his commercial use of the Navajo Fee Land. In addition, Blunk requested an injunction prohibiting the ADOT from demolishing the billboards.
Citing White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980), Blunk asserted that the district court needed to balance the state, federal, and tribal interests at stake to determine whether the ADOT could regulate the erection of billboards on the Navajo Fee Land. The district court determined that “even assuming ... that [Blunk’s] balancing test is the appropriate test to apply here, summary judgment is appropriate [because] the weighing of the factors in the balancing test ... rests solely in favor of the [ADOT].” The district court then granted summary judgment in favor of the ADOT and Bonine.[4] This appeal followed.
DISCUSSION
A. Standard of review
We review de novo the district court’s grant of summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir.1998). We may affirm on any basis the record supports. Herring v. F.D.I.C., 82 F.3d 282, 284 (9th Cir.1995).
B. The Indian preemption doctrine
The Indian preemption doctrine refers to two independent but related barriers to state regulation of Indians or Indian land. See generally David H. Getches, *882 Charles Wilkinson, & Robert A Williams, Jr., Cases and Materials on Federal Indian Law 432-437 (4th ed.1998). The first of these barriers is federal preemption, by which the federal government’s exclusive authority over relations with Jndian tribes may preempt state authority either by “an explicit congressional statement [or because] the balance of federal, state, and tribal interests tips in favor of preemption.” [5] Gila River Indian Community v. Waddell, 91 F.3d 1232, 1236 (9th Cir.1996). The second barrier is Indian sovereignty, by which traditional notions of Indian sovereignty may prevent state authority from infringing on the right of Indian tribal members to make their own laws and be ruled by them. Id. at 1239 (citing Crow Tribe of Indians v. Montana, 819 F.2d 895, 902 (9th Cir.1987), aff'd, 484 U.S. 997, 108 S.Ct. 685, 98 L.Ed.2d 638 (1988)).
By suggesting the use of the White Mountain balancing test to determine whether the ADOT may regulate his commercial use of the Navajo Fee Land, Blunk seeks to invoke the federal preemption prong of the Indian preemption doctrine. Except where provided by general preemption standards, however, federal preemption does not bar states from regulating the activities of non-Indians outside of Indian country. See In re Blue Lake Forest Prods., Inc., 30 F.3d 1138, 1141 & n. 6 (9th Cir.1994) (explaining that the federal preemption prong of the Indian preemption doctrine applies to on-reservation conduct and general preemption standards apply to off-reservation activities); Narragansett Indian Tribe v. Narragansett Elec. Co., 89 F.3d 908, 915 (1st Cir.1996) (“If the housing site is not Indian country, there is no bar to the exercise of the State’s jurisdiction. If it is, the State presumptively lacks jurisdiction to enforce the regulations and ordinances discussed here, and we must carry out a pre-emption analysis.”).
Although the jurisdictional importance of “Indian country” originated in federal criminal statutes and other specific statutory contexts, the Supreme Court now considers “the Indian country classification [to be] the benchmark for approaching the allocation of federal, tribal, and state authority with respect to Indians and Indian lands.” Indian Country, U.S.A., Inc. v. Oklahoma Tax Comm’n, 829 F.2d 967, 973 (10th Cir.1987); see, e.g., Alaska v. Native Village of Venetie Tribal Gov’t, 522 U.S. 520, 118 S.Ct. 948, 952 & n. 1, 140 L.Ed.2d 30 (1998) (“Although [18 U.S.C. § U51’s definition of Indian country] by its terms relates only to federal criminal jurisdiction, we have recognized that it also generally applies to questions of civil jurisdiction .... Generally speaking, primary jurisdiction over land that is Indian country rests with the Federal Government and the Indian Tribe inhabiting it, and not with the States.”)
Thus, although the Supreme Court has never explicitly held that the federal preemption prong of the Indian preemption doctrine is limited to Indian country, the Court has repeatedly used the Indian country classification to mark the boundaries of federal preemption in the Indian law context. For example, in Oklahoma Tax Comm’n v. Chickasaw Nation, 515 U.S. 450, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995), the Court’s determination of when state taxes were preempted turned on whether the taxes were imposed inside of Indian country:
We hold that Oklahoma may not apply its motor fuels tax, as currently designed, to fuel sold by the Tribe in Indian country. In so holding, we adhere to settled law: when Congress does not *883 instruct otherwise, a State’s excise tax is unenforceable if its legal incidence falls on a Tribe or its members within Indian country. We further hold, however, that Oklahoma may tax the income (including wages from tribal employment) of all persons, Indian and non-Indian alike, residing in the State outside of Indian country.
515 U.S. at 453, 115 S.Ct. 2214 (emphasis added). See also, e.g., Oklahoma Tax Comm’n v. Sac and Fox Nation, 508 U.S. 114, 124-126, 113 S.Ct. 1985, 124 L.Ed.2d 30 (1993) (holding that whether a state ' may exercise taxing authority over plaintiff tribal members depends on whether they live in Indian country), Organized Village of Kake v. Egan, 369 U.S. 60, 74-76, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962) (contrasting the limited power of state law within Indian country with the more extensive state authority outside Indian country).
Blunk contends the billboards he erected are in Indian country because the Navajo Fee Land is owned by the Navajo Nation and is in close proximity to the Navajo Reservation. The Supreme Court rejected a similar argument in Alaska v. Native Village of Venetie Tribal Gov’t, 522 U.S. 520, 118 S.Ct. 948, 140 L.Ed.2d 30 (1998). There, the State of Alaska entered into a joint venture agreement with a private contractor to construct a public school in Venetie, a village located on tribal fee land. 118 S.Ct. at 951. The tribe attempted to tax the contractor for conducting business on the tribe’s land. Id. Both the contractor and the state refused to pay the tax. Id. In determining whether the tribe could impose a tax, the Court focused on whether the land was Indian country as defined at 18 U.S.C. § 1151:
The term “Indian country” ... means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government ..., (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

Id.

Because the Venetie reservation had been revoked by federal law and no Indian allotments were at issue, the Court turned its attention to whether the tribe’s land fell within the “dependent Indian communities” prong of the Indian country definition. Id. at 953. The Court rejected a “textured” approach that defined Indian country through a multi-factor balancing test. Id. at 955, n. 7. Instead, the Court adopted a narrow definition of “dependent Indian communities”:
We now hold that it refers to a limited category of Indian lands that are neither reservations nor allotments, and that satisfy two requirements-first, they must have been set aside by the Federal Government for the use of the Indians as Indian land; second, they must be under federal superintendence.
Id. at 953.
The Court also rejected the argument that “Indian country exists wherever land is owned by a federally recognized tribe,” explaining that Indian country requires “both that the Federal Government must take some action setting aside the land for the use of the Indians ‘as such’ and that it is the land in question, and not merely the Indian tribe inhabiting it, that must be under the superintendence of the Federal Government.” Id. at 954, n. 5. The Court concluded that, because the Venetie land met neither the federal set-aside requirement nor the federal superintendence requirement, the land was not Indian country.
Native Village of Venetie controls our decision. The Navajo Fee Land is neither within the Navajo reservation nor is it an Indian allotment. The Navajo Fee Land is not a dependent Indian community because the land was purchased in fee by the *884 Navajo Nation rather than set aside by the Federal Government. The Federal Government does not “actively control[ ] the land[ ] in question, effectively acting as a guardian for the Indians,” nor does the Government exercise any lesser level of superintendence over the Navajo Fee Land. Id. at 956. The Navajo Fee Land does not become Indian country simply because of its tribal ownership or because of its proximity or importance to the Navajo Reservation. Id. at 954 n. 5, 955 n. 7, In sum, the requirements for the Navajo Fee Land to be “Indian country” are not met in this case. Because the land is not “Indian country,” the ADOT is not preempted by the federal preemption prong of the Indian preemption doctrine from regulating Blunk’s erection of billboards on the land. We need not consider the White Mountain balancing test.
Nor need we consider the second prong of the Indian preemption doctrine, i.e., whether the Navajo Nation has some sovereign interest at stake in this litigation which might affect the state’s regulation of the billboards Blunk erected on the Navajo Fee Land. The Navajo Nation’s letter to the district court appears to disavow any interest in the outcome of this case. Moreover, no one disputes the right of the Navajo Nation to regulate the use of its own land, and no one asserts that the Nation’s regulation conflicts with the state’s. Finally, our holding that the state may impose regulations on a non-Indian’s use of the Navajo Fee Land is consistent with Justice Stevens’s opinion in Brendale v. Confederated Tribes and Bands of the Yakima Indian Nation, 492 U.S. 408, 109 S.Ct. 2994, 106 L.Ed.2d 343 (1989), a case involving zoning of fee lands owned by nonmembers of an Indian Tribe located within the boundaries of the Tribe’s reservation. There, Justice Stevens explained: “This sort of concurrent jurisdiction, if it does exist, is simply a product of the unique overlapping of governmental authority that characterizes much of our Indian-law jurisprudence.” Id. at 440 n. 3, 109 S.Ct. 2994.
AFFIRMED.

. "Navajo County" is a county within the State of Arizona. It is not a unit or component of the Navajo Nation.

. After the ADOT moved for summary judgment, Blunk argued that the district court should wait for the Navajo Nation to determine whether to intervene in the action. The district court decided the case, however, after being presented with a letter to the ADOT and Blunk from Bill Johnson, staff attorney with the Navajo Nation. The letter stated:
This letter is to memorialize the position of the Navajo Nation regarding the Navajo Nation’s intervention in this case. After discussion with both of you and a thorough investigation of the issues by the Navajo Nation Department of Justice, the Navajo Nation does not wish to intervene in this particular matter nor does the Navajo Nation consider itself to be an indispensable party to this case.

. Where non-Indian activities occur outside of Indian Country, federal law preempts state law in three situations: 1) where federal law does so explicitly; 2) where the federal scheme is so pervasive that Coitgrfess must have intended preemption; and 3) where state law would thwart the achievement of Congress’s purposes. In re Blue Lake Forest Prods., Inc., 30 F.3d 1138, 1141 n. 6 (9th Cir.1994) (citing Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991)).